**Robert L. SMITH, Jr., Appellant,**

v.

**STATE of Tennessee, Appellee.**

Court of Criminal Appeals of Tennessee,
at Nashville.

May 5, 1988.

Permission to Appeal Denied by
Supreme Court July 25, 1988.

Miriam Nabors Banks, Asst. Atty. Gen., Thomas H. Shriver, Dist. Atty. Gen., Nashville, for appellee.

OPINION

DAUGHTREY, Judge.

The petitioner, Robert L. Smith, appeals the denial of his petition for post-conviction relief. He was convicted of aggravated kidnapping, aggravated rape, armed robbery, and assault with intent to commit murder in the first degree, and his punishment was fixed at four consecutive life sentences. This court affirmed his convictions in *State of Tennessee v. Robert L. Smith*, filed at Nashville, February 8, 1984. The Supreme Court denied permission to appeal on May 29, 1984.

Petitioner Smith contends (1) that he was improperly denied the right to represent himself with the "elbow assistance of counsel"; (2) that he received ineffective assistance of counsel; and (3) that he was denied due process because of alleged misconduct by the trial judge and prosecuting attorneys. After a full evidentiary hearing, the trial judge denied Smith's petition. We find no reversible error and affirm.

I.

The petitioner alleges that the trial court violated his right both to represent himself at trial and at the same time be represented by counsel, a right which he claims is guaranteed by the state and federal constitutions. The state asserts in response that there is no such constitutional guarantee.

The record reveals that Smith asked to represent himself on two occasions before trial. In response to the trial judge's questioning, Smith alleged that his attorneys had been negligent in investigating the case, that certain witnesses had perjured themselves, and that he wanted the court's permission to question certain witnesses, while his attorneys handled the remainder of his defense. The trial judge informed Smith that he could represent himself and confer with counsel after every question asked of each witness, but that he could not act as co-counsel intermittently

J. Graham Matherne, Nashville, for appellant.

throughout the trial. In effect, the trial judge gave Smith the option of representing himself or accepting the representation of two "very competent attorneys." Although not pleased with the choices, Smith chose to be represented by counsel.

Smith contends that *State v. Burkhart*, 541 S.W.2d 365 (Tenn. 1976), recognized the right of a defendant to represent himself with the "elbow assistance of counsel." He argues that the "elbow assistance" option mentioned in *Burkhart* is actually a fourth method of representation recognized in Tennessee, the other three being self-representation, representation by counsel, and "hybrid representation." According to Smith's argument on appeal, "elbow assistance" involves the defendant conducting his own defense with counsel present merely to provide technical legal advice, on such things as proper objections and courtroom decorum. "Hybrid counsel," he contends, involves both the defendant and counsel jointly planning strategy, making decisions, and conducting the defense at trial. He concedes that hybrid representation is a matter of discretion with the trial judge, but argues that elbow-assisted self-representation is separate from hybrid representation and is guaranteed by the Tennessee Constitution.

In support of his argument, petitioner Smith cites the following portion of the *Burkhart* opinion:

> He [the defendant] does not have a constitutional right under the State or Federal Constitution to participate *in propria persona* in his own defense and simultaneously to be represented by participating counsel.
>
> He may conduct his own defense without benefit of counsel or with an attorney present in the capacity of 'elbow counsel.'
>
> The choice is his; he represents himself or he is represented—one or the other, but not both.

541 S.W.2d at 371.

We reject as totally unfounded the defendant's argument that the reference to "elbow counsel" in *Burkhart* creates a constitutional right to an additional method of self-representation. By its own terms, *Burkhart* precludes such a possibility, as our Supreme Court recognized in a later case:

> The right of a defendant to participate in his own defense is an alternative one. That is, one has a right *either* to be represented by counsel *or* to represent himself, to conduct his own defense. *Burkhart, supra,* and cases cited therein. It is entirely a matter of grace for a defendant to represent himself and have counsel, and such privilege should be granted by the trial court only in exceptional circumstances.

*State v. Melson,* 638 S.W.2d 342, 359 (Tenn. 1982), cert. denied 459 U.S. 1137, 103 S.Ct. 770, 74 L.Ed.2d 983 (1983).

We conclude that the reference to "elbow counsel" in *Burkhart* is merely a shorthand form of saying that a criminal defendant has the right to conduct his own defense and in the process can confer with what has also been referred to as "standby counsel." *See e.g., Faretta v. California,* 422 U.S. 806, 834, n. 46, 95 S.Ct. 2525, 2541, n. 46, 45 L.Ed.2d 562 (1975). This option is entirely different from the dual (or "hybrid") representation sought by the defendant in this case.

The law is well-settled that a defendant has no constitutional right to act as co-counsel when he is represented by counsel. *State v. Burkhart,* 541 S.W.2d at 370–371 (Tenn. 1976); *State v. Franklin,* 714 S.W.2d 252 (Tenn. 1986); *State v. Melson,* 638 S.W.2d at 359. Both the state and federal constitutions provide for a right of self-representation or representation by counsel, but the ability of a defendant to act as co-counsel is a privilege conferred upon the defendant at the discretion of the trial judge. *Burkhart,* 541 S.W.2d at 371.

The *Burkhart* court warned that the privilege of dual representation should be granted only in exceptional cases when the interests of justice require. *Id.* Before the trial court may allow a defendant to participate in the defense, the court must determine "that the defendant (1) is not seeking to disrupt orderly trial procedure and (2) that the defendant has the intelli-

gence, ability and general competence to participate in his own defense." *Id.* Even when the trial judge determines that both factors are satisfied, the judge may nevertheless decline to permit hybrid representation. *State v. Franklin,* 714 S.W.2d at 261.

Petitioner Smith's reasons for wanting to act as co-counsel are inadequate to convince us that the trial judge abused his discretion in refusing Smith's request. The only concrete reason given by Smith for wanting to act as co-counsel was his conclusion that "[t]here has been statements and people telling the alleged victim what to say" and that they turn around and perjure themselves on the stand, under oath, saying that this never occurred when they know, in fact, that it did and it is on tape." As the trial judge correctly pointed out, perjury may be exposed through cross-examination, and there is nothing in the record to suggest that the defendant was the only person capable of exposing the alleged perjury. Additionally, the judge's offer to allow Smith to consult with counsel continuously throughout trial further negates any reason for allowing Smith to act as co-counsel. Therefore, we conclude that the trial judge did not abuse his discretion in refusing Smith's request.

## II.

Petitioner Smith next contends that the quality of representation provided by his court-appointed attorneys fell below objective community standards for professional competence and resulted in his being denied the effective assistance of counsel. *See Baxter v. Rose,* 523 S.W.2d 930 (Tenn. 1975). Smith alleges that counsel was deficient in the following ways: (1) against his wishes, counsel waived his right to a preliminary hearing; (2) counsel failed adequately to investigate the case; (3) counsel erroneously assured him that reversible error had occurred, and based on this advice, Smith then chose not to testify in his own defense; (4) counsel failed to discredit the victim through cross-examination or show that certain evidence had been falsified; and (5) counsel neglected to appeal the issues urged by Smith, including the denial of "elbow counsel" and the sufficiency of the evidence.

The evidence adduced at the evidentiary hearing showed that Smith was arrested for kidnapping pursuant to a warrant on December 26, 1981. The arrest warrant was dismissed because the victim was hospitalized with serious injuries arising out of the offense and thus was unable to attend a preliminary hearing for several months. Subsequently, the state submitted the case to the grand jury and an indictment was returned against Smith charging him with the offenses for which he was ultimately convicted. Smith apparently wanted a preliminary examination [1] but his attorneys decided to waive any right he might have to a preliminary examination in exchange for a tape recorded interview of the victim by the assistant district attorney general. Additionally, the state made the victim available for an interview with Smith's counsel after she recovered.

The purpose of a preliminary examination is to determine whether sufficient probable cause exists to believe that the defendant has committed a crime. An affirmative finding requires the magistrate to bind the defendant over to the grand jury. Rule 5.1, Tenn.R.Crim.Proc. However, when the state elects to initiate prosecution by submitting the case to the grand jury and the grand jury returns an indictment, the defendant is not entitled to a preliminary hearing. *Vaughn v. State,* 557 S.W.2d 64 (Tenn. 1977).

In Smith's case, the prosecuting attorney elected to dismiss the arrest warrant charging Smith with kidnapping when she discovered that the victim was hospitalized and unable to attend a preliminary examination. Instead, the case was submitted to

---

1. Smith also contends that he was unconstitutionally denied his right to a preliminary hearing. Because a preliminary hearing is not a constitutional right and because post-conviction relief is available only for constitutional violations, we address the lack of a preliminary hearing only as it bears on the effectiveness of counsel. *See McKeldin v. State,* 516 S.W.2d 82 (Tenn. 1974); TCA § 40-30-105.

the grand jury, which returned a true bill charging Smith with the four offenses for which he was subsequently convicted. Smith had no right to a preliminary examination because the grand jury had already determined that probable cause existed to charge Smith with the offenses. Moreover, Smith's attorneys adequately protected his interests in accepting the state's offer to interview the victim personally and to review taped interviews of the victim. These interviews provided Smith with discovery of the state's case, that he would not have had otherwise, even if a preliminary hearing had been held.

■ Smith's allegations that counsel was deficient in investigating the case are equally meritless. Specifically, Smith complains that counsel failed to locate the taxi driver who drove him back to the prison on the night of the offenses. According to Smith, the cab driver would have testified that Smith was calm and that his clothes were not torn as alleged by the victim. Smith also contends that counsel failed to locate a South Central Bell operator who worked with the victim and who would have testified that, on the night of the offense, Smith asked her where the victim was. According to Smith, the operator's testimony would have corroborated his defense, which was that he and the victim had engaged in consensual sex on the night of the offenses. Finally, Smith contends that counsel was negligent in not locating the clothing he wore on the night of the offenses, clothing which he alleges was not torn or ripped as the victim claimed.

Counsel testified that he interviewed the cab driver and decided not to use him as a witness, although he could not remember what the cab driver told him. Counsel also stated that he tried to locate the telephone operator based on Smith's description of her, but that he was unable to locate her. Finally, counsel testified that he was unable to obtain the clothing worn by Smith on the night of the offenses because the Department of Corrections had lost it.

The record shows that counsel made reasonable efforts to locate evidence that

Smith felt would exonerate him. Smith failed to offer proof that this evidence did, in fact, exist or that the evidence would conform with his characterization of it. Smith has thus failed to show that counsel was deficient in this regard.

■ Next, Smith claims that counsel erroneously advised him that the trial judge had committed reversible error in holding that Smith's prior rape conviction was admissible impeachment evidence. Upon their advice, Smith chose not to testify. He claims that counsel thus prevented him from making his own decision about whether to testify.

Counsel testified that they believed that the *Morgan* ruling[2] made by the trial judge was erroneous but denied that they would have told Smith that the error guaranteed reversal. According to counsel, Smith decided not to testify after weighing the advice of his attorneys. That advice resulted from a tactical decision that the defense would be better served by keeping the prior rape conviction from the jury instead of having the defendant testify, especially when his version of the incident was already before the jury through the cross-examination of police officers who took his pretrial statement.

The function of a reviewing court is not to second-guess reasonable strategic decisions of counsel. *See United States v. DeCoster*, 487 F.2d 1197, 1201 (D.C.Cir. 1973), *cert. denied* 444 U.S. 944, 100 S.Ct. 302, 62 L.Ed.2d 311 (1979). Certainly, counsel's advice concerning the prejudicial effect of the prior rape conviction being put before the jury was sound. Smith has not shown that counsel improperly coerced his decision not to testify.

■ Nor does the record support Smith's allegations that counsel was deficient for failing to discredit the victim or for failing to show that certain evidence was falsified. First, neither a transcript nor a summary of the cross-examination of the victim is included in the record, and we are thus precluded from reviewing this allegation.

2. *See State v. Morgan,* 541 S.W.2d 385 (Tenn.    1976).

Second, the only specific reference to falsified evidence concerns Smith's bare allegation that the rope introduced at trial, with which he allegedly tied the victim, was "false evidence." Smith does not explain why he believes the rope is "false evidence," and we are not inclined to speculate. Suffice it to say, Smith has not met his burden of proof on these allegations.

■ Finally, Smith contends that counsel was deficient for not appealing the issues for which he sought review, namely, his right to "elbow assistance of counsel" and the sufficiency of the evidence. Counsel testified that they did not appeal these issues because they felt they lacked merit. Counsel testified that they made a tactical decision to omit issues which they felt were frivolous, in order not to distract the appellate court from consideration of more serious issues. As we have already said, we will not second-guess the strategic decisions of counsel. Furthermore, both of these issues have now been reviewed. Although the sufficiency of the evidence was not challenged as such on direct appeal, the reviewing court noted that the evidence "... conclusively showed that [victim] ... was ... the victim of an aggravated kidnapping, an aggravated rape, an armed robbery, and an assault with intent to commit murder in the first degree, all at the hands of the defendant." Moreover, in this post-conviction proceeding, we have reviewed the issue of "elbow counsel" and concluded that no error occurred as a result of the denial of Smith's request.

The petitioner has failed to establish that he was denied the effective assistance of counsel under the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

### III.

■ Smith next contends that he was denied due process because of alleged misconduct on the part of the prosecution, specifically Assistant District Attorney General Hausman. He claims that the instant prosecution was initiated despite insufficient evidence because Hausman believed that he was responsible for an unrelated, unsolved murder. He also claims that Hausman tricked him out of his right to a preliminary hearing, that she improperly coached the victim, that she knowingly falsified evidence, and that she suborned perjury from the victim.

The prosecuting attorney admitted that she believed Smith was involved in the unsolved murder because when he was first arrested, he said to the arresting officers, "You want to talk to me about that killing at Nashville Tech, don't you?" Nevertheless, the instant prosecution was begun because of evidence connecting Smith to the crime and because he had a prior conviction for rape in which the victim suffered bodily injury.

Hausman testified that she voluntarily dismissed the original warrant because the victim was unable to attend a preliminary examination. In the victim's recorded pretrial statement that was turned over to defense counsel, Hausman told the victim that she had pulled "a little trick" by getting the warrant dismissed, thereby cutting off Smith's right to a preliminary hearing. The prosecutor later testified that she characterized her actions as a "trick" in order to convince the victim to meet with defense counsel.

Hausman acted within her authority when she chose to dismiss the warrant and submit the case directly to the grand jury. Although this effectively prevented Smith from the benefit of a preliminary examination, it also meant that he was not incarcerated or put under the restraints of pretrial release prior to the time the indictment was returned. Moreover, Smith suffered no prejudice because he was given a copy of the victim's pretrial statement and an opportunity to interview her in person.

■ Finally, Smith offers no proof other than bare allegations to support his theory that General Hausman falsified evidence or suborned perjury. The record does not support such a conclusion. Smith has failed to meet his burden of proving his allegations by a preponderance of the evidence. *See Clenny v. State*, 576 S.W.2d 12, 14 (Tenn.Crim.App. 1978), *cert. denied*

441 U.S. 947, 99 S.Ct. 2170, 60 L.Ed.2d 1050 (1979).

## IV.

Smith's final argument is that he was denied due process by the alleged misconduct of the trial judge and the post-conviction hearing judge. He claims that the trial judge erred in refusing his request for "elbow assistance of counsel" and displayed bias in favor of the prosecuting attorneys by deferring to their objections and opinions.

The trial judge testified that he was an assistant district attorney general prior to being appointed to the bench. He left the DA's office several days before the offenses occurred and had no knowledge of the case other than what he had read in the newspaper. The trial judge also testified that he was not influenced by his prior working-relationship with the DA's office.

We have already determined that Smith was not deprived of his constitutional right to self-representation and that the trial judge did not err in refusing his request to act as co-counsel. Smith has failed to specify any examples of improper deference to the prosecution, and the record does not support such a conclusion.

Smith claims that the hearing judge erred by not allowing him to cross-examine the trial judge concerning his reasons for denying Smith's request for dual representation. But given the fact that Smith had no constitutional right to dual representation, the reasons for the trial judge's exercise of discretion in this matter are not proper considerations in a petition for post-conviction relief. *See* TCA § 40-30-105. Furthermore, the trial judge clearly stated his reasons when he denied Smith's motion. These included the fact that Smith was represented by two competent attorneys, that he had been unable to demonstrate any particular need for the privilege of speaking in his own behalf, and that his participation would not serve the interest of judicial economy.

For all the foregoing reasons, we affirm the denial of Smith's petition for post-conviction relief.

DUNCAN, P.J., and JONES, J., concur.