STATE of Tennessee, Appellee,

v.

John L. GOODWIN, III, Appellant.

Court of Criminal Appeals of Tennessee, at Nashville.

April 20, 1995.

No Permission to Appeal Applied for to the Supreme Court.

Matt Q. Bastian, Shelbyville, for Appellant.

Charles W. Burson, Attorney General and Reporter, Eugene J. Honea, Assistant Attorney General, Criminal Justice Division, Nashville, Lawrence Ray Whitley, District Attorney General, Dee Gay, Assistant District Attorney General, Gallatin, for Appellee.

### *OPINION*

WELLES, Judge.

The Defendant brings a delayed appeal from his convictions of burglary and assault with intent to commit rape. He represented himself at trial. After a sentencing hearing, where he was represented by appointed counsel, the Defendant was sentenced, as a Range II offender, to eight (8) years on each conviction to be served consecutively. We affirm in part and remand for sentencing considerations.

The Defendant brings eleven issues to this court in his delayed appeal:

(1) Whether or not the trial court properly determined that the Defendant's request for self-representation was a knowing and intelligent waiver of his Sixth Amendment right;

(2) Whether the Defendant was denied his right of "access to court" under the Sixth Amendment to the United States Constitution when the Defendant proceeded to trial *pro se* and the Defendant did not have access to so-called "tools of defense," the appointed advisory counsel did not provide the Defendant with any reference materials or tools of defense, and the trial court stated that advisory counsel's function was not to be a carrier of materials or books or speak contemporaneously in court;

(3) Whether or not it was a violation of the Defendant's right to due process when he was booked and incarcerated as a "pretrial detainee" and held in solitary confinement for eight days;

(4) Whether the Defendant's First Amendment rights of free speech were violated when the court admonished the Defendant for his *pro se* pretrial motion practice;

(5) Whether the Defendant was deprived of his rights to Due Process, Confrontation, and Access to the Courts when the trial court, with the consent of advisory counsel, ordered a continuance of the trial from November 22, 1989 to December 12, 1989 without the *pro se* Defendant's approval and the continuance denied the Defendant of the opportunity to move to suppress the State's physical evidence for the State's failure to comply with the Defendant's motion for discovery;

(6) Whether the Defendant was denied his right to a fair and impartial trial when the court denied his request for a continuance when a properly subpoenaed witness for the defense failed to appear on December 12, 1989, when said witness was a crucial defense witness;

(7) Whether the Defendant was denied his right to counsel when he was appointed advisory counsel less than twenty-four hours before trial;

(8) Whether the Defendant was denied his right to counsel and due process because of statements between the court and advisory counsel which "chilled" the relationship between the *pro se* Defendant and his advisory counsel;

(9) Whether the Defendant was denied effective assistance of counsel by John Pellegrin, his advisory attorney before trial;

(10) Whether the Defendant received effective assistance of counsel from Louis Oliver, advisory attorney during trial;

(11) Whether Defendant was properly sentenced under the 1989 Sentencing Act as a Range II persistent offender in violation of the *ex post facto* law, instead of as a Range I offender under pre–1989 sentencing law.

We will briefly address the facts of the offense. On August 3, 1989, the victim returned from work to her home, in Hendersonville, Tennessee, between 3:30 and 4:00 in the afternoon. She went back to her bedroom to lie down. While she was lying down, she heard a door slam. Thinking it was her daughter or husband, whom she was expecting, the victim got up to see who it was. Upon opening the door to her bedroom, she saw the Defendant standing in her hallway. She told him to get out of her house, but he grabbed her by the arms and pushed her into the adjacent guest bedroom. The victim stated at trial that the Defendant repeated, "You know you want it," several times. The victim attempted to fight the Defendant off. He pushed her onto the bed, ripped her blouse, tore her bra and pulled off her pantyhose.

As the victim and Defendant were fighting, they heard her husband's truck in the driveway. The Defendant got up and attempted to leave the house, but the victim's husband grabbed him as he was trying to walk out the door. The victim called the police, and the victim's husband got the Defendant's name and license plate number to "buy some time" until the police could get there. When the victim's husband thought the police should almost be at the house, he let the Defendant go. An officer arrived, radioed the license plate number to a back-up officer and the back-up officer picked up the Defendant.

The Defendant was arrested and arraigned on August 3, 1989. On August 16, 1989, the

Defendant filed a motion for self-representation. He was indicted by the Grand Jury of Sumner County on September 14, 1989. The trial court appointed counsel John Pellegrin on September 22, 1989. The trial court held a hearing on Defendant's motion for self-representation on October 27, 1989. The trial court granted the motion; however, because of certain statements made by the Defendant, the trial court decided to let appointed counsel and Defendant decide if appointed counsel would represent the Defendant or act in an advisory capacity only. On November 9, 1989, the Defendant filed a motion for the trial court to enter an order granting the Defendant the right to represent himself. On November 20, 1989, the court entered an order granting the Defendant's motion to represent himself. The order also stated that Pellegrin would be Defendant's advisory counsel only. On November 20, 1989, the case was continued until December 12, because certain of the Defendant's subpoenas had not been served.

On December 6, 1989 Pellegrin filed a motion to withdraw as advisory counsel due to a conflict of interest. The trial court granted this motion on December 7. The trial court appointed Louis Oliver as advisory counsel after a hearing on December 11. The Defendant was convicted in a jury trial in which he represented himself on December 12, 1989. The Defendant filed a motion for the appointment of counsel on December 19. An order granting the motion was also filed December 19 appointing Keith Bell to represent the Defendant at his sentencing hearing. The Defendant was sentenced to eight years on each count to be served consecutively. Bell withdrew as counsel before the appeals process began, and the court ordered the Defendant to be represented by the Public Defender's Office.

David Doyle was the attorney of record for the Defendant's Motion for New Trial. This motion was denied. Following the advice of Doyle, the Defendant waived his right to appeal on May 10, 1990. He filed a *pro se* Petition for Post-conviction relief the same day. Defendant signed a waiver and was allowed to proceed *pro se*. He made a motion for the appointment of advisory counsel on September 17, 1990. David Doyle was appointed. Although it is not clear when, Doyle subsequently withdrew as advisory counsel.

The Defendant later decided to be represented by an attorney, and Matt Bastian was appointed to represent the Defendant at the post-conviction hearing, which took place April 19, 1991. The trial court denied the post-conviction petition and the Defendant appealed to this court. *Goodwin v. State*, 116 Or.App. 279, 840 P.2d 1372 (1992). This court ordered that the Defendant proceed by a delayed direct appeal and ordered the trial court to allow the Defendant to file another motion for a new trial. *Id.* The motion for new trial was denied. The Defendant brings a delayed direct appeal to this court.

## I.

Defendant's first issue is whether or not the trial court was correct in finding that the Defendant made an intelligent and knowing waiver of his Sixth Amendment right to counsel.

■ Rule 44(a) of the Rules of Criminal Procedure requires a written waiver. Although there is no waiver form signed by the Defendant to assert his intent to represent himself, we find that there was a valid written waiver. The Defendant filed a Motion for Self-representation on August 16, 1989. In this motion, the Defendant asserts his desire to represent himself. This motion is signed by the Defendant. The Defendant also filed two motions titled, "Motion for Court to Issue Order Granting the Defendant the Right to Self Representation." One motion was filed November 10, 1989, and the second motion was filed November 11, 1989. Both of these motions are signed by the Defendant. These motions demonstrate how determined the Defendant was to represent himself. We find that these motions satisfy the requirement for a written waiver.

■ Rule 44(a) requires more than a written waiver. Rule 44(a) of the Rules of Criminal Procedure states:

Before accepting such waiver the court shall first advise the accused in open court

of his right to the aid of counsel in every stage of the proceedings. The court shall, at the same time, determine whether there has been a competent and intelligent waiver of such right by inquiring into the background, experience and conduct of the accused and such other matters as the court may deem appropriate. Any waiver accepted shall be spread upon the minutes of the court and made a part of the record of the cause.

The United States Supreme Court stated that a defendant has to knowingly and intelligently waive his right to counsel, but he need not have knowledge of the law and the legal system equal to that of an attorney to knowingly and intelligently waive this right. *Faretta v. California,* 422 U.S. 806, 835, 95 S.Ct. 2525, 2541, 45 L.Ed.2d 562 (1975). The record must show that the defendant made his decision knowing the disadvantages and the dangers of representing himself. *Id.* "For his technical legal knowledge, as such, [i]s not relevant to an assessment of his knowing exercise of the right to defend himself." *Id.* at 836, 95 S.Ct. at 2541.

■ The trial court held a hearing to decide the Defendant's Motion for Self-representation on October 27, 1989. The trial court asked the Defendant his age and how much education he had. The Defendant replied that he was forty-two and that he had three years of college. (The trial court discovered at the sentencing hearing that the Defendant was untruthful about his educational level. He had only a sixth grade education. The Defendant also told the trial court that he had worked as a paralegal for a judge and a lawyer.) The trial court then informed the Defendant that he had the right to have an attorney appointed to represent him, and that this attorney would be provided for any proceedings from pretrial negotiations through an appeal. The trial court also warned the Defendant that self-representation would cause confusion for his defense. The record contains the following exchange:

> *Court:* In granting your request, as I said, there is apt to be confusion in the defense and presentation of your defense in court. What I'm offering to do is appoint an experienced trial attorney to represent you throughout all proceedings, including any preliminaries that might be necessary and any negotiations if you wish them to be made and certainly for the trial itself. Do you have any problem with that procedure?
>
> *Defendant:* Well, Your Honor, I had—in order for me to answer that and be real truthful with you—
>
> *Court:* I'll expect you to be absolutely truthful with me.
>
> *Defendant:* I am—at this present time do not feel that—I had a bad experience about—approximately ten years ago. I let an attorney—
>
> *Court:* You'll not have a bad experience in this court. I understand if you have a bad experience that it stays with you for quiet awhile, but the bar of this county and I hope this Court, including the Attorney General's office will give you no bad experience. Of course, we can't guarantee you anything but a fair trial.
>
> *Defendant:* Yes, sir, I understand that, but I would rather represent my own self.
>
> *Court:* There are certain questions that I am required to ask you. Really there are a lot of question, some I have asked you as to your age and your education and your understanding that you can have a lawyer appointed for you.
>
> Now, we do not have available in this jurisdiction the law library you are asking for. We do not have that available. If there are certain questions, we'll try to get them answered. But the jail doesn't have a library. I, myself, have a very limited library, and I have to keep those books in my office. So, a lawyer has those, and you don't. That's one point of confusion that might arise that might be a hindrance to you.
>
> *Defendant:* I understand that, Your Honor. With advisory counsel being appointed to me to aid me, I feel like, you know, such books as the Tennessee Code Annotated codes, you know, which are readily available even down at the jail. I think they have a set down at the jail. Those are the main ones. And the cases that, you know, I might need, too, out of *Tennessee Digest* or something like that, I'm sure that, you

know, whatever counsel was appointed to me, you know, could readily supply those, you know, by photostatic copy or whatever.

*Court:* Maybe yes and maybe no. He would not be required to at all. That would be within his decision and not yours.

I want you to be fully aware that when you try your case counsel would be advising you, but the trial would not be held up while you ask your counsel every question every time.

Furthermore, I, as Judge, would not be your advocate. It is not incumbent upon me to inform you of the rules of evidence nor local rules nor to do anything other than allow you to represent yourself.

You seem educated, and I'm still puzzled as to why you are refusing the offering that the State has and that I, as Judge, are making for a skilled attorney. During the trial itself many questions will arise that only a skilled attorney can answer. An advisory attorney is not required to answer those questions for you. He can give you momentary advice, but that is not like working with your case and it is not like knowing all the details, and he's not going to have one foot in and one foot out so to speak. That would not be permitted because that is an unconscionable position to put an attorney in.

*Defendant:* I understand that, Your Honor.

*Court:* You understand it all?

*Defendant:* I understand completely.

. . . .

*Court:* At the Judicial Conference this subject was taken up about a person that wants to represent himself and has a constitutional right to do so, and my only purpose now is to be certain that you understand. I can tell already that you do understand about the burden of representation.

I want to inform you that, and reading from this treatise the Supreme Court has approved, "You have no greater right than any other litigants and must expect and receive the same treatment and consideration as if you were represented by an attorney. You are held to the same famil-

iarity with the required procedures," and that's what bothered me some, "and the same notice of statutory local rules as would be attributed to a duly-qualified member of the bar. The trial judge will not act for your attorney at all. A party who represents himself would be held to the same standard of knowledge and practice as any qualified member of the bar. Reasonable consideration for a layman acting as his own attorney, "and I have already advised you this, "does not require the Court to interrupt the course of proceedings to translate legal terms, explain legal rules, or otherwise attempt to address the ongoing consequences of the party's decision to function in a capacity for which he is not trained."

At the conclusion of this hearing, the trial court accepted Defendant's motion to represent himself. However, the Defendant then stated that if he was not able to have law books he thought he should accept appointed counsel. The trial judge stated that he would hold up the order for self-representation until appointed counsel and the Defendant could confer and make a decision.

On November 10 and 11, the Defendant filed two separate motions asking the trial court to enter an order allowing the Defendant to represent himself. On November 17, 1989, a hearing was held on these motions. The Defendant asserted his wish to represent himself with appointed counsel sitting as "elbow counsel" at trial. The trial court agreed to this and entered an order allowing the Defendant to represent himself on November 17, 1989, which was filed November 20, 1989.

As evidenced by the passage from the initial hearing, the Defendant clearly understood the hazards of representing himself. Although facts came out in the sentencing hearing that proved the Defendant misled the court regarding his education level and previous employment, the Defendant demonstrated that he knew what he needed to obtain to mount a defense and the problems that he would encounter. He also testified to previous dealings with the judicial system. The Defendant was adamant that he represent himself at trial, and we agree with the

trial court that the Defendant had sufficient knowledge of what he was getting into to knowingly and intelligently waive his right to counsel.

This issue has no merit.

## II.

The Defendant's second issue is whether he was deprived of his right of "access to court" as guaranteed under the Sixth Amendment because he did not have access to a law library or access to other so-called "tools of defense." The Defendant also argues he was deprived of his right of "access to court" because the trial court admonished him and restricted the duties of advisory counsel so as to exclude being a carrier of materials and books for the Defendant's benefit, or speaking during the trial.

■ The constitutional right of access to court includes the requirement that "prison authorities [ ] assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds v. Smith,* 430 U.S. 817, 828, 97 S.Ct. 1491, 1498, 52 L.Ed.2d 72 (1977) (footnote omitted). One federal district court has held that the right to self-representation includes access to legal materials. *Owens–El v. Robinson,* 442 F.Supp. 1368, 1387 (W.D.Penn.1978).

■ In *Owens–El,* the inmates of the Allegheny County Jail brought a class action suit against the warden of the jail challenging the constitutionality of certain conditions in the facility. Most of these inmates were pretrial detainees, as was the Defendant in the case *sub judice. Id.* at 1373. The pretrial detainees have a higher claim to an "unfettered enjoyment" of their constitutional rights because they have not yet been convicted of a crime. *Id.* Among the conditions challenged were the lack of a law library at the jail and lack of access to attorneys. The public defender's office was the source for criminal matters and Neighborhood Legal Services

(NLS) was the source for civil matters. *Id.* at 1386. The NLS did not have enough resources to handle the volume of emergency matters of the inmates. *Id.* The District Court stated that the lack of a law library in the prison and the limited access to attorneys, the existence of at least one of these factors being a necessity for representation, constituted a violation of the prisoners' rights under the Sixth and Fourteenth Amendments. Id. at 1387.

The Sixth Circuit Court of Appeals dealt with a similar issue in *Martucci v. Johnson,* 944 F.2d 291 (6th Cir.1991). In *Martucci,* the defendant was placed in the Anderson County jail as a pretrial detainee. He brought several charges of violations of his constitutional rights at the jail. Among those constitutional rights was the right of access to court because the jail did not contain a law library. The court of appeals held that Martucci's right of access to court had not been violated because the "jail officials were in the practice of providing legal materials to inmates 'upon request.'" *Martucci,* 944 F.2d at 295.[1]

■ In the case *sub judice* the Defendant claims that he was denied access to law books and was not given pen or paper. There is no law library in the jail. At the hearing to decide his motion for self-representation the trial court informed the Defendant that he would not allow the advisory attorney to be "an errand boy." The assistant jail administrator of the Sumner County jail, at the time the Defendant was a pretrial detainee there, testified at the hearing on Defendant's post-conviction petition. He testified that when anyone at the jail needed law books or any other legal information the Sheriff was notified so that arrangements could be made to obtain the books or information. He stated that he remembered in this particular case the requests were given special attention. This is the only evidence concerning this point contained in the record.

1. The court also stated that Martucci's attorney, who represented him during the time before trial, would also meet his right of access to court. *Martucci,* 944 F.2d at 295. The court stated that the right of access to court could be met by either legal tools necessary for a defense or the assistance of an attorney. *Id.* (citing *Holt v. Pitts,* 702 F.2d 639, 640 (6th Cir.1983) (per curiam)).

We do not have any information concerning whether or not the Defendant actually received the books, and if he did how long it took to get the information. The record before us is lacking in this regard. In this case, we must decide whether the possible violation of his constitutional rights warrants a reversal and the granting of a new trial. We are unable to conclude that such an error has occurred.

The Defendant filed several motions as well as writing seven letters. His motions all appear knowledgeable of the law. It is evident that he had some sort of access to materials in order to draft these motions. These facts coupled with the testimony of the assistant jail administrator lead us to believe there was no violation of the Defendant's right of access to court, and if there was error, it was harmless.

This issue is without merit.

### III.

■ The Defendant's third issue is whether his right to due process was violated when he was kept in solitary confinement for approximately eight days as a "pretrial detainee" after having been booked. The Defendant has made no references to the record in his brief concerning this issue. His mistreatment in the county jail is only referred to once. This reference is in the Defendant's testimony in his post-conviction hearing. There is not enough evidence in this record to review this issue.

Because the Defendant's argument on this issue is not supported by references to the record, this issue is deemed waived. T.R.A.P. 27(a)(7); Tenn.Crim.App.R.Proc. 10(b); *State v. Hammons,* 737 S.W.2d 549, 552 (Tenn.Crim.App.1987).

■ It is the Defendant's duty to have prepared an adequate record in order to allow a meaningful review on appeal. T.R.A.P. 24(b); *State v. Bunch,* 646 S.W.2d 158, 160 (Tenn.1983); *State v. Roberts,* 755 S.W.2d 833, 836 (Tenn.Crim.App.), *perm. to appeal denied,* (Tenn.1988). When no evidence is preserved in the record for review, we are precluded from considering the issue. *Roberts,* 755 S.W.2d at 836.

### IV.

■ The Defendant's fourth issue is whether judicial statements made during a pretrial hearing violated his right to free speech and his right to due process. The statements that the Defendant refers to were made in the October 27, 1989 hearing on his motion for self-representation. The statement in question was made in reply to the Defendant's request for pens and paper because he claimed he was selling his meals for pen and paper at that time. The trial court told the Defendant that it was not going to give him anything that was already available to him at the jail. The trial court then stated, "you'll be filing motions and delays and matters like that. If you're not careful, they won't amount to anything."

The Defendant argues that this statement caused a " 'chilling' of Goodwin's right to free speech. . . ." We cannot accept the Defendant's argument that this statement "chilled" the Defendant's right of free speech. The trial court seems to be advising the Defendant that many of his motions had the potential of being frivolous. The statement does not reach the level of a threat against the Defendant, and it certainly did not put any limitations upon what motions the Defendant could or could not file. This is evidenced by the fact that the Defendant filed four motions between the hearing on October 27 and the trial on December 12. These statements certainly do not warrant a reversal or the granting of a new trial.

This issue is without merit.

### V.

The Defendant's fifth issue is whether he was deprived of his constitutional rights of due process, confrontation and access to court when the trial court ordered a continuance of the trial from November 22, the original trial date, to December 12, with the consent of advisory counsel, and without consulting the Defendant. The Defendant also argues that this continuance prevented him from moving to suppress the State's physical evidence against him because the State failed to comply with a Rule 16 discovery request.

**44**

The granting or denial of a continuance is a matter left to the sole discretion of the trial court, whose decision will not be disturbed absent "a clear showing of gross abuse of this discretion to the prejudice of the defendant." *Baxter v. State,* 503 S.W.2d 226, 230 (Tenn.Crim.App.), *cert. denied,* (Tenn.1973). This court has previously stated that "[t]he only test is whether the defendant has been deprived of his [or her] rights and an injustice done." *State v. Goodman,* 643 S.W.2d 375, 378 (Tenn.Crim.App.), *perm. to appeal denied,* (Tenn.1982). In order to reverse the judgment of the trial court, we must be convinced that the defendant "did not have a fair trial and that a different result would or might reasonably have been reached had there been a different disposition of the application for a continuance." *Baxter,* 503 S.W.2d at 230; *accord Goodman,* 643 S.W.2d at 378.

There was no hearing transcribed in the record concerning this continuance. We do not know whether advisory counsel agreed to the continuance or not. There is an order from the trial court which orders a continuance because process for the Defendant's witnesses had not been served and returned by November 20, the day before the trial was to begin. We do not find any prejudice to the Defendant or abuse of discretion by the trial court from this record.

This issue has no merit.

VI.

Defendant's sixth issue is whether he was deprived of his right to a fair and impartial trial when he was not granted a continuance when a crucial witness to the defense had not been served. On the day before the trial the Defendant made an oral motion for a continuance because his witnesses had not been served. The Criminal Court Clerk for Sumner County testified at the hearing. The case had been originally scheduled for November 21, however, the Defendant's witnesses had not been served process at that time. The trial was then continued to December 12. She also testified that the subpoenas for the December 12 trial went out November 20. The court clerk testified that the witness in question, Virginia

W. Davis Goodwin, the Defendant's ex-wife, had not been served at the time of the hearing. She also said the Sheriff's office in Nashville was contacted thirty minutes before the hearing. The sheriff's office informed the court clerk that they had contacted the witness's place of employment, but she was not there. They left a message for her to return the call, but she never returned the call.

The Defendant then made an offer of proof as to why the witness was vital to his case. He stated that he wanted his ex-wife to testify to the fact that he was impotent, which he considered a defense to the charges in the indictment. The trial court did not grant a continuance. The court stated that it was possible to be impotent toward one person and not another and that the Defendant's mother and his doctor could testify to the fact that he was impotent. The trial court then denied the motion for a continuance.

The granting or denial of a continuance is a matter left to the sole discretion of the trial court, whose decision will not be disturbed absent "a clear showing of gross abuse of this discretion to the prejudice of the defendant." *Baxter,* 503 S.W.2d at 230 This court has previously stated that "[t]he only test is whether the defendant has been deprived of his [or her] rights and an injustice done." *Goodman,* 643 S.W.2d at 378. In order to reverse the judgment of the trial court, we must be convinced that the defendant "did not have a fair trial and that a different result would or might reasonably have been reached had there been a different disposition of the application for a continuance." *Baxter,* 503 S.W.2d at 230; *accord Goodman,* 643 S.W.2d at 378.

We do not find that the trial court abused its discretion in denying the Defendant's motion for a continuance. There is no evidence that the outcome would have been any different with the testimony of the missing witness. The Defendant's mother testified to the fact that the Defendant was impotent. The Defendant's doctor testified to the fact that the Defendant had mild diabetes which sometimes caused impotence. Furthermore, impotence is not a defense to attempted rape.

The fact that the Defendant was not able to perform penile penetration does not mean that he could not be guilty of attempted rape or even rape.

## VII.

■ We now address the Defendant's issues 7, 8, 9, and 10. These issues include whether the Defendant was deprived of his sixth amendment right to counsel by his initial advisory counsel or by his substitute advisory counsel; by the appointment of new advisory counsel twenty-four hours before trial; and because of out-of-court statements made by the trial court to advisory counsel which had a "chilling effect" on the relationship between the Defendant and advisory counsel. The Defendant waived his sixth amendment right to counsel when he chose to represent himself. He cannot now argue that he was deprived of effective assistance of counsel.

Therefore these issues have no merit.

## VIII.

■ The final issue is whether the Defendant's court appointed attorney at the sentencing hearing was ineffective in his representation because the Defendant was sentenced under the 1989 Sentencing Act as a Range II offender "in violation of the Ex Post Facto Clause" of both the United States and Tennessee Constitutions when he should have been sentenced under the 1982 Sentencing Act as a Range I offender. We remand for further proceedings regarding sentencing.

The Defendant committed the crime in August of 1989. He was convicted in December of 1989. He was sentenced February 8, 1990, under the 1989 Sentencing Act as a Range II offender to eight years on both counts to run consecutively to each other for an effective sentence of sixteen years. The 1989 Sentencing Act went into effect November 1, 1989. The trial court was able to sentence the Defendant under the new sentencing act because, Tennessee Code Annotated section 40-35-117 states, "Unless prohibited by the United States or Tennessee constitution, any person sentenced on or after November 1, 1989, for an offense commit-

ted between July 1, 1982 and November 1, 1989, shall be sentenced under the provisions of this chapter." Tenn.Code Ann. § 40-35-117(b).

The Sentencing Commission Comments following Tennessee Code Annotated section 40-35-117 state "[b]ecause of the ex post facto provisions of the Tennessee and United States constitutions, a defendant sentenced after November 1, 1989, for an offense committed between July 1, 1982, and November 1, 1989, may not receive a greater punishment than he would have received under the prior law."

The Tennessee Supreme Court had held that the trial court must compute the Defendant's sentences under both the 1989 sentencing act and the pre–1989 sentencing act in this situation. *State v. Pearson,* 858 S.W.2d 879, 884 (Tenn.1993). In the case sub judice, the record does not reflect an analysis of the Defendant's sentences under both of the acts. Therefore, we remand for resentencing. We also suggest that the trial court address the enhancing factors more fully on the record.

■ At the conclusion of the sentencing hearing, the trial court found three enhancing factors. The court first found as an enhancement factor that the Defendant had a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range. Tenn.Code Ann. § 40-35-114(1). Evidence of two prior convictions were introduced at the sentencing hearing. It appears that both convictions were necessary to establish that the Defendant was a Range II offender. If there are additional criminal convictions or criminal behavior relied upon by the trial judge to establish this enhancing factor, the prior convictions or behavior should be identified on the record.

■ The court also found as an enhancement factor that the Defendant treated or allowed the victim to be treated with exceptional cruelty during the commission of the offense. Tenn.Code Ann. § 40-35-114(5). The trial court should state what actions of

the Defendant, apart from the elements of the offense, constituted "exceptional cruelty."

■ The court also found as an enhancement factor that the offense involved a victim and was committed to gratify the Defendant's desire for pleasure or excitement. Tenn.Code Ann. § 40-35-114(7). In making this determination the court stated only "its right on that, as there could be no other reason whatsoever." Pleasure or excitement is not an essential element of the offense of assault with intent to commit rape. *State v. Adams,* 864 S.W.2d 31, 35 (Tenn.1993). If this factor is to be used to enhance a sentence, however, the State has the burden of demonstrating that the assault was sexually motivated (done to gratify the Defendant's desire for pleasure or excitement). *Id.*

In sentencing the Defendant, the trial court did not state which enhancement factors it was applying to each conviction. Apparently the court applied all three enhancement factors to both the burglary and the assault.

■ We also remand so the trial court may further address the issue of consecutive sentencing in this case. The trial court states on the record that the Defendant is "a danger to all members of society." However, this is the only reason given for applying a consecutive sentence. At the resentencing hearing, if reasons for ordering a consecutive sentence are found they should be clearly set out on the record. If a consecutive sentence is ordered because the Defendant is found to be a dangerous offender, the trial court should specifically address the four factors set out by this court in *State v. Woods,* 814 S.W.2d 378, 380 (Tenn.Crim.App.), *perm. to appeal denied* (Tenn.1991).

We affirm the Defendant's convictions. We vacate his sentences and remand for resentencing for the reasons set forth herein.

WADE and WHITE, JJ., concur.