# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON

## STATE OF TENNESSEE v. CLYDE TURNER

**Direct Appeal from the Criminal Court for Shelby County**
**No. 98-00209  Chris Craft, Judge**

---

**No. W1999-00797-CCA-R3-CD - Decided May 24, 2000**

---

The defendant, Clyde Turner, was tried for and convicted of carjacking. In this appeal, he challenges the sufficiency of the evidence and argues that he was denied the right of self-representation.

**Tenn. R. App. P. 3; Judgment of the Trial Court Reversed and Remanded**

WADE, P.J., delivered the opinion of the court, in which WOODALL and WITT, JJ., joined.

Tony N. Brayton, Assistant Public Defender (on appeal), A. C. Wharton, Jr., District Public Defender (of counsel), Mozella Ross, Assistant Public Defender (at trial), Memphis, Tennessee, for the appellant, Clyde Turner.

Paul G. Summers, Attorney General & Reporter, Mark E. Davidson, Assistant Attorney General, Glen Baity, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The defendant, Clyde Turner, was convicted on one count of carjacking. See Tenn. Code Ann. § 39-13-404. The trial court imposed a Range II, 16-year sentence. In this appeal of right, the defendant argues that the evidence was insufficient to support the verdict and contends that the trial court denied his right to self-representation. Because the defendant was entitled to represent himself at trial, the judgment must be reversed. The cause is remanded to the trial court for a new trial.

In the early morning hours of June 11, 1997, Sabrina Luckett stopped for gas at a Mapco convenience market in Memphis. As she stood near her vehicle, a man wearing a jogging suit and baseball cap offered to pump her gas for fifty cents. Ms. Luckett declined, explaining that she had no change. When she attempted to drive away, the man grabbed the steering wheel and was successful in gaining control of the vehicle. Ms. Luckett, who was able to escape her assailant, later identified the defendant from a photographic lineup. While her initial description of the defendant to the police involved several errors, including her belief that she knew her assailant from high

school, she made a positive identification of the defendant at trial. Darold Powell, who was inside the market at the time of the carjacking, identified the defendant as the perpetrator. Powell, who had been convicted of several crimes, such as indecent exposure, possession of drug paraphernalia, and criminal trespass, found the defendant's identification under a bridge near the crime scene.

Three days after the car theft, the vehicle was found in the possession of Demario Jackson, who said he received it from Tommy Vaughn. Vaughn, when shown a photographic lineup, identified the defendant as the person who had left the vehicle at a crack house. Vaughn, who knew the vehicle had been stolen, "loaned" it to Jackson in exchange for a rock of crack cocaine. Vaughn had a prior criminal record which included felony drug convictions.

Prior to trial, the defendant requested a hearing to determine his competency to stand trial. A medical evaluation indicated that he was competent. At the hearing, the defendant acknowledged that he understood the nature of the proceedings and asked the trial court to allow him to represent himself at trial. Because the defendant had claimed mental illness, the trial court expressed reservations about allowing him to proceed to trial without counsel. The following exchange took place:

> Q. (by the trial judge) . . . Now, if you want to try this case yourself, you'll have to show me that your mental illness is not going to get in the way of your being able to try a case.
>
> A. But you said yourself that . . . there was no question about my competency. . . .
>
>      * * *
>
> Q. So I think it's going to be best that you have an attorney to try this case for you.
>
>      * * *
>
> A. I'd like to exercise my right to pro se this case.
>
> Q. I understand that .
>
> A. I'm just straight about that.

The dialogue continued with the defendant continuing to insist that he was capable of representing himself and the trial judge attempting to persuade him otherwise. The following comments were made on the record:

Q.    You're competent to stand trial but I'm just not sure you're competent to represent yourself.  Is there anything else you want to say about that?

A.    No, I just wanted to say if I'm being denied that right, I take exception–

Q.    You are being denied . . . because you're mentally ill.

A.    All right.

On appeal, the state is entitled to the strongest legitimate view of the evidence and all reasonable inferences which might be drawn therefrom.  State v. Cabbage, 571 S.W.2d 832, 836 (Tenn. 1978).  The credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the evidence are matters entrusted exclusively to the jury as the trier of fact.  Byrge v. State, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978).  This court may neither reweigh nor reevaluate the evidence.  Id. at 836.  Nor may this court substitute its inferences for those drawn by the trier of fact.  Liakas v. State, 286 S.W.2d 856, 859 (Tenn. 1956).

When the sufficiency of the evidence is challenged, the relevant question is whether, after reviewing the proof offered in the light most favorable to the state, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  Tenn. R. App. P. 13(e); State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983).

Here, the defendant complains that the conviction is based upon the testimony of two witnesses, Sabrina Luckett and Darold Powell, who were not credible witnesses.  More specifically, the defendant, who is 47 years old, complains that Ms. Luckett's identification was based upon an eleven-year-old photograph of him.  He points out that Vaughn, who was arrested for this offense, was only 32 years of age at the time of the offense (about the same as the defendant at the time of the photo) and could have been the perpetrator.  The defendant also points out that the other witness, Powell, was a crack addict whose testimony included several incidents of lapsed memory.  In summary, the defendant argues that the eyewitness identification is insufficient to establish his guilt beyond a reasonable doubt.

In our view, the evidence was sufficient.  The jury acted within its prerogative when it chose to accredit the testimony of the two eyewitnesses to the crime.  A rational trier of fact could have found that the defendant committed the essential elements of the crime.  The evidence of guilt satisfies the standard prescribed.  Jackson v. Virginia, 443 U.S. 307 (1979).

Of greater concern is whether the trial court denied the defendant his right of self-representation.  The defendant complains that he initially asserted his right to proceed pro se some three months before the trial.  The defendant contends that because he was found to be competent to stand trial, he was also competent to exercise his right of self- representation.

Every person has a constitutional right to represent himself. U.S. Const. amend. VI; Tenn. Const. art. I, § 9; Faretta v. California, 422 U.S. 806, 818-820 (1975). In State v. Herrod, 754 S.W.2d 627 (Tenn. Crim. App. 1988), this court ruled that the exercise of the right of self-representation is based upon three conditions:

(1)     The defendant must timely assert his right to self-representation;

(2)     the exercise of the right must be clear and unequivocal; and

(3)     the defendant must knowingly and intelligently waive his right to assistance of counsel.

Id. at 629-30. A defendant need not have legal training or experience in order to competently and intelligently elect self-representation. Faretta, 422 U.S. at 835.

The state concedes that the defendant made a timely assertion of his right to represent himself and that his request was clear and unequivocal. Moreover, the state concedes that the defendant had attempted to waive his right to the assistance of counsel even after the trial judge had warned of the pitfalls of self-representation. Finally, because the trial court had previously determined that he was competent to stand trial, the defendant was also competent to knowingly and intelligently waive his right to counsel. The standard of competency for waiving the right to counsel is the same as that for standing trial. Godinez v. Moran, 509 U.S. 389 (1993). The only proof that the defendant may have lacked competency was that he received disability benefits and had been prescribed drugs for the treatment of a mental illness. The conviction must, therefore, be set aside and the cause remanded so that the defendant can be given the opportunity to knowingly and intelligently waive his right to counsel.

When an accused desires to proceed pro se, the trial judge must conduct an intensive inquiry as to his ability to represent himself. State v. Northington, 667 S.W.2d 57, 61 (Tenn. 1984). The waiver of the right to counsel must be knowingly and intelligently made. Tenn. R. Crim. P. 44; State v. Armes, 673 S.W.2d 174, 177 (Tenn. Crim. App. 1984). In Johnson v. Zerbst, 304 U.S. 458, 465 (1938), the United States Supreme Court placed "the serious and weighty responsibility . . . of determining whether there is an intelligent and competent waiver" directly upon the trial judge. In a subsequent case, more specific guidelines were established:

[A] judge must investigate as long and as thoroughly as the circumstances of the case before him demand. The fact that an accused may tell him that he is informed of his right to counsel and desires to waive this right does not automatically end the judge's responsibility. To be valid such waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation

-4-

thereof, and all other facts essential to a broad understanding of the whole matter. A judge can make certain that an accused's professed waiver of counsel is understandingly and wisely made only from a penetrating and comprehensive examination of all the circumstances under which such a plea is tendered.

Von Moltke v. Gillies, 332 U.S. 708, 723-23 (1948). Rule 44 of the Tennessee Rules of Criminal Procedure places a similar obligation on the trial court:

Every indigent defendant shall be entitled to have counsel assigned to represent him in all matters necessary to his defense and at every stage of the proceedings, unless he executes a written waiver. Before accepting such waiver the court shall first advise the accused in open court of his right to the aid of counsel in every stage of the proceedings. The court shall, at the same time, determine whether there has been a competent and intelligent waiver of such right by inquiring into the background, experience and conduct of the accused and such other matters as the court may deem appropriate. Any waiver shall be spread upon the minutes of the court and made a part of the record of the cause.

Tenn. R. Crim. P. 44(a); see also State v. Gardner, 626 S.W.2d 721, 723 (Tenn. Crim. App. 1981). This court has previously ruled that trial courts should question a defendant who wishes to proceed pro se according to the guidelines contained in 1 Bench Book for United States District Judges 1.02-2 to -5 (3d ed. 1986), which are also contained in the appendix to United States v. McDowell, 814 F.2d 245, 251-52 (6th Cir. 1987). See Herrod, 754 S.W.2d at 630.

In Northington, our supreme court held that the trial court had "wholly failed to properly investigate [whether] the defendant understood the consequences of self-representation in light of the Von Molke factors." 667 S.W.2d at 61 (internal quotation marks omitted). The trial court had addressed the seriousness of the charges, had advised that a pro se defendant would be held to the same standard as a lawyer, and was assured that the pro se defendant had discussed the case with his appointed attorney. Id. at 59. The age and education of the accused was also determined in advance of the acceptance of the waiver of the right to counsel. Id. The trial court had warned Northington that proceeding pro se was unwise. Id. Our supreme court set aside the conviction because the trial court "failed to diligently examine the defendant's background and experience, failed to notify defendant as to the possible extent of any penitentiary sentence, and failed to elaborate fully to defendant why he thought it 'unwise' to waive counsel." Id. at 61 (emphasis added).

In State v. Goodwin, 909 S.W.2d 35, 41 (Tenn. Crim. App. 1995), a panel of this court ruled that Goodwin had validly waived his right to counsel. In that case, the trial court inquired as to Goodwin's age and education and warned him that proceeding pro se would cause confusion. Id. at 40. Goodwin was informed that an attorney would be provided for him for pretrial

proceedings through an appeal, if needed. Id. He was warned that if he waived counsel, he would not have access to a law library and that his advisory counsel was not required to provide him with photocopies of relevant legal materials. Id. The trial judge told him that the trial would proceed at the same pace as it would if he had appointed counsel, that he would not have an opportunity to confer with advisory counsel for every question, and that he was responsible for understanding the rules of evidence and local rules of court. Id. at 41. The trial judge informed Goodwin that, as a litigant, he would have "no greater right than any other litigant" and that he would be treated the same as if he were represented by counsel. On appeal, this court concluded that the trial court is not required to interrupt the trial to explain procedural rules, legal terms, or consequences of the litigant's actions and ruled that Goodwin "clearly understood the hazards of representing himself." Id.

While not at issue in this appeal, the record also demonstrates that the defendant sought "elbow counsel" when he asked permission to represent himself. "Elbow counsel," "standby counsel," "advisory counsel," and "arm chair counsel" are terms used interchangeably. In Smith v. State, 757 S.W.2d 14 (Tenn. Crim. App. 1988), this court rejected "as totally unfounded" the concept of "elbow counsel." Quoting State v. Melson, 638 S.W.2d 342, 359 (Tenn. 1982), the panel observed as follows:

> The right of a defendant to participate in his own defense is an alternative one. That is, one has a right either to be represented by counsel or to represent himself, to conduct his own defense. It is entirely a matter of grace for a defendant to represent himself and have counsel, and such privilege should be granted by the trial court only in exceptional circumstances.

Smith, 757 S.W.2d at 16 (citations omitted). In Smith, this court at least recognized the concept of "standby counsel," which was described as allowing the defendant to conduct his own defense accompanied by a lawyer with whom to confer, appointed through the largess of the trial court. A defendant has no constitutional right, of course, to act as co-counsel when he is represented by counsel. State v. Franklin, 714 S.W.2d 252 (Tenn. 1986). Before trial courts may allow defendants to participate in a dual representation, there must be a determination that the defendant (a) is not seeking to destroy orderly trial procedure and (b) that the defendant has the intelligence, ability, and general competence to participate in his own defense. Burkhart, 541 S.W.2d at 371. Even if both factors are satisfied, the trial judge may nevertheless decline to permit dual representation. Franklin, 714 S.W.2d at 261. Here, the trial court did not address either factor on the record.

In State v. Small, 988 S.W.2d 671, 674 (Tenn. 1999), our supreme court held that the decision whether to appoint advisory counsel to assist a pro se defendant rests entirely within the discretion of the trial court, who should make the determination based "upon the nature and gravity of the charge, the factual and legal complexity of the proceedings, and the intelligence and legal acumen of the defendant." In this case, the trial court made no such determination.

In summary, the judgment of conviction is reversed. The cause is remanded to the trial court so that the defendant may be given the opportunity to knowingly and intelligently waive

his right to counsel and execute a written waiver as required by Rule 44(a), Tenn. R. Crim. P.  Costs are assessed against the state.