IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT KNOXVILLE

FEBRUARY 1999 SESSION

FILED

July 30, 1999

Cecil Crowson, Jr.
Appellate Court
Clerk

| | | |
|---|---|---|
| LUTHER E. FOWLER, | ) | |
| | ) | C.C.A. No. 03C01-9711-CR-00509 |
| Appellant, | ) | |
| | ) | Hamilton County |
| v. | ) | |
| | ) | Honorable Douglas A. Meyer, Judge |
| STATE OF TENNESSEE, | ) | |
| | ) | (Post-Conviction) |
| Appellee. | ) | |

FOR THE APPELLANT:

John Allen Brooks
736 Georgia Avenue
Suite 600
Chattanooga, TN  37402

FOR THE APPELLEE:

John Knox Walkup
Attorney General & Reporter

Todd R. Kelley
Assistant Attorney General
425 Fifth Avenue, North
Nashville, TN  37243

William H. Cox, III
District Attorney General

David Wayne Denny
Assistant District Attorney General
600 Market Street, Suite 310
Chattanooga, TN  37402

OPINION FILED: _____

AFFIRMED

L. T. LAFFERTY, SENIOR JUDGE

## O P I N I O N

The appellant, Luther Fowler, referred herein as "the petitioner," appeals as of right from the denial of his petition for post-conviction relief by the Hamilton County Criminal Court. In 1992, the petitioner was convicted in a jury trial of the offense of felonious assault to commit murder first degree. After a sentencing hearing, the trial court imposed a sentence of forty years as a Range III, career offender in the Department of Correction. The petitioner presents three issues for appellate review:

1. Whether the trial court erred in failing to adequately ensure that the petitioner's right to counsel, at trial, was adequately waived.

2. Whether the trial court erred in failing to have the petitioner sign a written waiver of his right to counsel.

3. Whether the trial court erred in finding that the petitioner received effective assistance of counsel at trial and on appeal.

After a thorough review of the entire record, briefs of the parties, and appropriate law, we affirm the trial court's judgment.

## PROCEDURAL HISTORY

Since 1992, the petitioner has developed a litigious reputation in his quest for freedom. Therefore, it is necessary to set out the petitioner's attempts to reverse his conviction.

The petitioner was indicted for felonious assault to commit murder first degree in April, 1989, and for aggravated assault in December, 1991. Before the trial, the petitioner disappeared, and it was necessary for the State of Tennessee to extradite the petitioner from the states of Florida, North Carolina, and Illinois. The petitioner proceeded to trial on November 14, 1991, for the offense of felonious assault to commit murder first degree, with his counsel, William R. Heck, which resulted in a mistrial due to the jury's inability to reach a verdict.

At the petitioner's second trial on February 11, 1992 for felonious assault with intent

2

to commit first degree murder, aggravated assault, and first degree burglary, the petitioner declined and "fired" his court-appointed attorney, William R. Heck. The petitioner urged the trial court to permit him to represent himself during the trial. After a colloquy with the trial court, the petitioner was permitted to represent himself. After jury selection, opening statements, and cross-examination of certain state witnesses by the petitioner, the petitioner requested assistance of counsel. Mr. Heck was reappointed and represented the petitioner during the rest of the trial. On February 12, 1992, the petitioner was found guilty on the felonious assault and attempted aggravated assault charges. The jury found him not guilty of the burglary charge.

On March 18, 1992, at the conclusion of a sentencing hearing, the trial court sentenced the petitioner, as a career offender, to sixty years for the felonious assault to commit murder first degree. The trial court imposed a twelve-year sentence, as a Range III, career offender, for the offense of aggravated assault. On direct appeal, this Court affirmed the conviction for felonious assault to commit murder first degree, but remanded for a new sentencing hearing. This Court also reversed and dismissed the petitioner's conviction for attempted aggravated assault. In this direct appeal, the petitioner did not assign as error the trial court's failure to adequately insure that the petitioner waived his right to counsel. *State v. Luther E. Fowler,* No. 03C01-9207-CR-00249, 1993 WL 278468 (Tenn. Crim. App., Knoxville, July 27, 1993).

At the resentencing hearing, the trial court refused to consider any prior convictions of the petitioner for the purpose of establishing his sentencing range and sentenced the petitioner to twenty-five years as a Range I, standard offender. On direct appeal by the state, this Court remanded the case to the trial court for a third sentencing hearing. *State v. Luther E. Fowler,* No. 03C01-9409-CR-00334, 1995 WL 550921 (Tenn. Crim. App. Knoxville, September 19, 1995).

However, prior to the third sentencing hearing, the petitioner filed a petition for post-conviction relief with the Hamilton County Criminal Court on May 2, 1994. In his petition,

the petitioner alleged: (1) the petitioner did not knowingly and intelligently waive his constitutional right to counsel; (2) the trial court failed to advise the petitioner of the dangers of going to trial *pro se*; and (3) ineffective assistance of counsel at trial and on appeal. The trial court appointed Mark Biesack to represent the petitioner. On November 23, 1994, at the conclusion of an evidentiary hearing, the trial court denied the petitioner any relief. On direct appeal, this Court concluded the trial court was in error for determining that the petitioner's waiver of right to counsel had been previously determined and was not cognizable in the post-conviction petition, since the effectiveness of petitioner's waiver of counsel was not raised on direct appeal nor ruled on by this Court. This Court reversed the trial court's judgment and granted the petitioner a new trial. *Luther E. Fowler v. State,* No. 03C01-9501-CR-00027, 1996 WL 10265 (Tenn. Crim. App., Knoxville, January 11, 1996). On February 15, 1996, this Court vacated its opinion filed January 11, 1996, and dismissed the petitioner's petition. It had come to this Court's attention that a third sentencing hearing was pending, and thus the petitioner's petition was premature.[1]

On July 10, 1996, the petitioner filed a second petition for post-conviction relief with the Hamilton County Criminal Court. The petitioner alleged that he was entitled to relief on the grounds that: (1) he did not knowingly and intelligently waive his constitutional right to counsel; (2) the trial court did not advise him of the dangers of going to trial *pro se*; and (3) he received ineffective assistance of counsel at trial and on appeal.[2] The trial court appointed counsel to represent the petitioner.

On October 17, 1996, the petitioner filed an amendment to his petition. In this amendment, the petitioner alleged: (1) he was incorporating the ground previously set forth in his petition dealing with waiver of his right to counsel; (2) he was denied due

---

[1]In the third sentencing hearing, the trial court imposed a forty-year sentence as a Range III, career offender. There was no direct appeal of this sentence.

[2]These allegations are the same as outlined in the petitioner's first petition for post-conviction relief filed in 1994. The petitioner stated, "Since the original petition for post-conviction relief was dismissed as having been filed prematurely, I am resubmitting the petition anew after entry of final judgment."

4

process and a fair trial due to the state's failure to produce tangible evidence, to wit, a knife, which could have been used to exculpate the petitioner; and (3) the jury instructions on reasonable doubt were unconstitutional resulting in the jury's confusion as to reasonable doubt. The state filed a general answer of denial to the petitioner's allegations.

On March 21, 1997, at the conclusion of an evidentiary hearing, the trial court denied the petitioner's petition for post-conviction relief.[3] On April 17, 1997, the petitioner filed a notice of the appeal that is the subject of this opinion.

## EVIDENTIARY HEARING

William R. Heck testified he was appointed to represent the petitioner at the first trial in 1991, which resulted in a mistrial. Heck further testified that he has been a licensed attorney for twenty-seven years, primarily practicing criminal law. Heck is a member of the Tennessee Association of Criminal Defense Lawyers and has participated in over ninety trials and fourteen death penalty trials. Heck described his representation of the petitioner as "Mr. Fowler and I didn't get along." During the first trial, the petitioner requested Heck to do certain things that Heck felt ethically he could not do. When the petitioner informed Heck that he had given Attorney Jerry Summers a list of witnesses for the first trial, Heck attempted to obtain this list, but Summers indicated he did not have it. Heck testified the petitioner told him of everyone who had knowledge of or had any bearing on his case. Heck interviewed some of the witnesses, but could not find the others. Heck testified he had some problems with two of the witnesses for the petitioner at the first trial. One witness informed Heck that the petitioner wanted him to lie in court, and there were indications of threats by the petitioner for this testimony. The other witness was Terry Fowler, the petitioner's nephew, who informed Heck that the petitioner wanted him to testify regarding things that may not have been true.

---

[3]The record reveals that the petitioner filed a disbarment proceeding for malpractice against his post-conviction counsel. Counsel moved this Court to withdraw as attorney on direct appeal. This Court denied the counsel's request for withdrawal and noted the petitioner's history of having seven different attorneys and of being "difficult."

Prior to the first trial, Heck interviewed the petitioner's nephew, all police officers, the victim, and other witnesses listed by the state. The petitioner presented a self-defense theory to the jury. The petitioner's girlfriend disappeared prior to both trials and could not be found. Heck testified he and the petitioner did not have any problems during the first trial. Heck recalled that either the alleged victim or the state had the victim's knife in court during the first trial. He could not recall if the knife was present at the second trial, since he was not present during the opening hours of the trial.

Heck testified that, prior to the second trial, the petitioner indicated he wanted to represent himself. Heck advised the petitioner that self-representation was fraught with hazard for many reasons. Heck was aware of the petitioner's limited ability to read and write. Heck cautioned the petitioner that, if he represented himself, the state would file certain documents, and perhaps it would be advantageous if the petitioner could properly read and write. Heck testified the petitioner was very insistent in wanting to represent himself and urged Heck to bring this matter to the trial court's attention. Between the first and second trial, Heck testified there was always a problem with the petitioner, including a civil lawsuit in federal court, which was summarily dismissed. Heck testified that the petitioner was particularly interested in legal developments and trends which affected his case. Heck described the petitioner's grasp of courtroom procedures as "he's familiar, more than familiar with courtrooms, and he knows how things operate and he's constantly, you know, staying in touch . . . His adequacy in trying a jury case . . . I really don't know, maybe he would do an excellent job, I have heard he's done it before or since or something . . . but he knows how the courtroom operates." Heck testified he did not assist the petitioner in signing a waiver of counsel. In Heck's opinion, the trial court attempted to help the petitioner.

After the trial, Heck testified that the petitioner wanted him "to have nothing to do with the case." Heck advised the petitioner that an appeal had to be taken. The petitioner advised Heck that he would take care of the appeal. Heck represented the petitioner at his first sentencing hearing, which was remanded. Heck testified that the state's proof was

6

overwhelming as to the petitioner's guilt.

The petitioner, age 60, testified that William R. Heck did represent him at the first trial. Prior to the first trial, the petitioner instructed Heck to obtain certain records of witnesses who would testify in his behalf from Attorney Jerry Summers. The petitioner contends Heck did not review these records.[4] The petitioner testified that, between the first and second trial, Heck only saw him one time outside the courtroom. Heck informed the petitioner that the state would offer him sixty years to settle the case. On the day of trial, the state reduced the offer to forty years, which the petitioner rejected. The petitioner testified that, when he saw Heck for the first time, he explained how he shot the victim, but Heck did not take any notes. The petitioner testified as to the circumstances surrounding the shooting of the victim and why it was self-defense.[5]

The petitioner admitted he has difficulty reading and only has a third grade education. The petitioner testified he "fired" Heck before the second trial. He also testified that Heck failed to obtain his witness, "Cherokee," who was in the bar. However, Heck did subpoena Terry Fowler, the petitioner's nephew. The petitioner denied that he tried to coerce any witness into lying for him. The petitioner admitted the trial court warned him about the difficulty of self-representation. After the trial was underway, the petitioner requested that Heck return for the remainder of the trial. The petitioner did not sign a written waiver of his right to counsel. The petitioner admitted he was not a good lawyer in his own behalf.

During cross-examination, the petitioner testified that he had been convicted of five to six felonies, some of which he had entered pleas of guilty. Also, the petitioner had been through prior criminal trials, including a jury trial in Alabama, in which the petitioner had represented himself and won an acquittal. Regarding the Alabama case, the petitioner

---

[4]The petitioner testified that it was at the second trial when Heck gave him the records obtained from Summers, as well as a copy of the transcript of the first trial.

[5]The petitioner did not testify during his trial.

testified he believed it was necessary to represent himself, because, in his first trial, "they were kangarooing me . . . they picked all bootleggers for juries." The petitioner's Alabama conviction was overturned in federal court, which led the petitioner to represent himself in his second Alabama trial. In this trial, the petitioner testified that he selected the most intelligent people he could pick. The petitioner could not recall what the Alabama judge told him about his right to an attorney and the consequences of self-representation, but the trial judge offered him every lawyer in that county. He rejected the judge's offer because he had been "kangarooed" before and did not want a lawyer.

As to the knife, the petitioner testified it was present at the first trial, and it belonged to the victim, who had pulled it and pointed it at the petitioner. However, the knife was not produced at the second trial. In addition, the petitioner and Heck revealed some interesting thoughts about each other.[6]

The trial court denied the petitioner's petition for post-conviction relief.

_____

[6]When Heck was asked how he would rate or assess the petitioner in terms of other clients he had represented, Heck replied, "He's I guess more obstreperous than most . . . [T]his was going to be a problem client in the sense that he would be inclined to make unreasonable demands, he would be inclined to lie . . . and as I got to know him more, I realized . . . he has no honor, he has no integrity, his word means nothing to him, honesty is a concept that is totally foreign to him." The petitioner was equally candid in his feelings concerning Heck and stated, "The man could not tell you the truth if his life depended on it."

**LEGAL ANALYSIS**

**A.**

**WAIVER**

The petitioner contends the trial court in 1992 failed to adequately insure that his right to counsel was properly waived and failed to have the petitioner sign a written waiver of his right to an attorney as required by Tenn. Code Ann. § 8-14-206 and Rule 44(a) of the Tennessee Rules of Criminal Procedure. The state concedes the petitioner's waiver was not effective but argues the petitioner has waived this issue, because he failed to raise it on direct appeal.

In his reply brief, the petitioner submits that the state's claim of waiver would seriously affect the fairness and integrity of any judicial proceedings under both the Sixth Amendment of the United States Constitution and Article 1, Section 9 of the Tennessee Constitution. Further, the petitioner contends that the presumed waiver under Tenn. Code Ann. § 40-30-206(g) must have been knowingly and understandingly made for the presumption to withstand attack, citing *Swanson v. State,* 749 S.W.2d 731, 735 (Tenn. 1988). In *Swanson,* the Supreme Court addressed the question of whether grounds for relief have been waived within the meaning of Tenn. Code Ann. § 40-30-112(b) (Repealed 1995).

Since this petition was filed in 1996, we must determine the validity of the state's response under the Post-Conviction Procedure Act of 1995. Relief under Tenn. Code Ann. § 40-30-203 shall be granted when the conviction or sentence is void or voidable because of the abridgment of a right guaranteed by the Constitution of Tennessee or the Constitution of the United States. Once a petition for post-conviction relief has been properly filed, the trial court must undertake a preliminary consideration of the petition. Tenn. Code Ann. § 40-30-206. In its examination of the petition, the trial court shall examine the allegations of fact in the petition, and "[i]f the facts alleged, taken as true, fail to show that the petitioner is entitled to relief or fail to show that the claims for relief have

9

not been waived or previously determined, the petition shall be dismissed. The order of dismissal shall set forth the court's conclusions of law." Tenn. Code Ann. § 40-30-206(f).

In a petition for post-conviction relief, the petitioner shall include all allegations of fact supporting each claim for relief set forth in the petition and allegations of fact explaining why each ground for relief was not previously presented in any earlier proceeding. Tenn. Code Ann. § 40-30-204(e). In this case, the petitioner relied on the fact that his petition for post-conviction relief of 1994 had been dismissed by this Court in February, 1996. The trial court entered a preliminary order, pursuant to Tenn. Code Ann. § 40-30-207, finding the petition filed by the petitioner presented a colorable claim for relief.

In construing the Post-Conviction Procedure Act of 1995, a rebuttable presumption of waiver arises if a ground for relief was not raised before a court of competent jurisdiction in which it could have been raised. *Blair v. State*, 969 S.W.2d 423, 424 (Tenn. Crim. App. 1997), *per. app. denied* (Tenn. 1998); Tenn. Code Ann. § 40-30-210(f). In *House v. State,* 911 S.W.2d 705, 714 (Tenn. 1995), the Supreme Court adopted an objective standard to determine waiver in the context of a collateral attack on a criminal conviction based on the following policy concerns:

> Defendants to criminal prosecutions, like parties to civil suits, should be bound by the judgments therein entered. When they fail to make a timely objection to errors of the courts they must not be allowed at later times of their own choosing--often, perhaps, after witnesses against them have become unavailable--to assert those grounds in post-conviction actions.

(quoting *Arthur v. State,* 483 S.W.2d 95, 97 (Tenn. 1972).

The presumption of waiver found in Tenn. Code Ann. § 40-30-206(g) is as follows:

> A ground for relief is waived if the petitioner personally or through an attorney failed to present it for determination in any proceeding before a court of competent jurisdiction in which the ground could have been presented unless:
>
> (1) The claim for relief is based upon a constitutional right not recognized as existing at the time of trial if either the federal or state constitution requires retroactive application of that right; or
>
> (2) The failure to present the ground was the result of

10

state action in violation of the federal or state constitution.

This means that a petition for post-conviction relief does not present a colorable claim for relief and is subject to dismissal without a hearing, unless it alleges facts showing that the grounds asserted for relief were not previously waived in a prior proceeding in which they could have been presented. *See State v. Smith,* 814 S.W.2d 45, 47 (Tenn. 1991). Further, the legislature clearly intended to restrict convicted criminals from collaterally attacking their convictions. When a convicted inmate desires to contest his or her criminal conviction, the petition for post-conviction relief must strictly comply with the statutory requirements. Tenn. Code Ann. § 40-30-204(e) requires:

> The petitioner shall include allegations of fact supporting each claim for relief set forth in the petition and allegations of fact explaining why each ground for relief was not previously presented in any earlier proceeding.

After a review of the petition for relief in this cause and the amended petition, we find that these pleadings fail to set forth the facts as to why the issue alleging that the petitioner did not knowingly and intelligently waive his constitutional right to counsel was not presented in his motion for a new trial or on direct appeal. Any question as to whether the petitioner waived his right to representation by counsel was ripe for consideration on direct appeal. In *State v. Luther E. Fowler,* No. 03C01-9207-CR-00249, 1993 WL 278468, at *1 (Tenn. Crim. App., Knoxville, July 27, 1993), Special Judge William S. Russell, in affirming the petitioner's direct appeal, commented upon the petitioner's decision to represent himself at trial:

> The defendant-appellant's choice to, in substantial part, represent himself put an additional burden upon the trial court; and has resulted in the clouding of some of the issues upon this appeal. We note the care which the trial judge displayed in advising the defendant of his rights, of procedures, rules of evidence, etc.

The record establishes that the state raised with the trial court the question of the petitioner's failure to raise the issue of waiver of counsel on direct appeal. We acknowledge any ground for relief, except ineffective assistance of counsel, could have

11

been raised during trial, and failure to do so will be deemed a waiver. *Blair v. State,* 969 S.W.2d 423, 425 (Tenn. Crim. App. 1997), *per. app. denied* (Tenn. 1998); *see also David Allen Brimmer v. State,* No. 03C01-9703-CC-00083, 1998 WL 612888, at *33 (Tenn. Crim. App., Knoxville, September 15, 1998). Since the petitioner has failed to present a factual explanation of why his claim that "the trial court failed to adequately ensure that the petitioner's right to counsel, at trial, was adequately waived" was not raised on direct appeal, the trial court would have been well justified in dismissing the petition without an evidentiary hearing. *Blair*, 969 S.W.2d at 425.

## B.

## WAIVER OF COUNSEL

However, we elect to consider the petitioner's claim that he did not effectively, knowingly, and intelligently waive his right to counsel. At the conclusion of the evidentiary hearing, the trial court conceded that it did not follow the guidelines as set out in the *Bench Book for United States District Judges* (3rd ed., 1986). However, the trial court concluded that it substantially complied with the mandates of the United States Supreme Court in assuring that the petitioner knowingly and intelligently waived his right to the assistance of counsel. Under our law, a post-conviction petitioner has the burden of proving his allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-210(f). On appeal, the findings of fact made by the trial court are conclusive and will not be disturbed unless the evidence contained in the record preponderates against them. *Brooks v. State,* 756 S.W.2d 288, 289 (Tenn. Crim. App.), *per. app. denied* (Tenn. 1988). The burden is on the petitioner to establish that the evidence preponderates against those findings. *Clenny v. State,* 576 S.W.2d 12, 14 (Tenn. Crim. App.), *cert. denied* (Tenn. 1978).

In *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), the United States Supreme Court ruled that an accused in a criminal prosecution has a constitutional right to represent himself -- proceed **pro se** without the assistance of counsel. In its ruling, the Court said:

> The language and spirit of the Sixth Amendment contemplate
> that counsel, like the other defense tools guaranteed by the

Amendment, shall be an aid to a willing defendant--not an organ of the State interposed between an unwilling defendant and his right to defend himself personally. To thrust counsel upon the accused, against his considered wish, thus violates the logic of the Amendment. In such a case, counsel is not an assistant, but a master; and the right to make a defense is stripped of the personal character upon which the Amendment insists. . . . An unwanted counsel "represents" the defendant only through a tenuous and unacceptable legal fiction. Unless the accused has acquiesced in such representation, the defense presented is not the defense guaranteed him by the Constitution, for, in a very real sense, it is not *his* defense.

422 U.S. at 820-21, 95 S.Ct. at 2533-34, 45 L.Ed.2d at 573-74.

When an indigent accused desires to proceed pro se, the trial court is obligated to conduct an intensive inquiry as to the accused's ability to represent himself. *State v. Northington,* 667 S.W.2d 57, 61 (Tenn. 1984). The waiver of the right to counsel must be knowingly and intelligently made. *State v. Armes,* 673 S.W.2d 174, 177 (Tenn. Crim. App.), *per. app. denied* (Tenn. 1984); Tenn. R. Crim. P. 44. Tennessee Rule of Criminal Procedure 44(a) provides:

> Every indigent defendant shall be entitled to have assigned counsel in all matters necessary to the defense and at every stage of the proceedings, unless the defendant executes a written wavier. Before accepting such waiver the court shall first advise the accused in open court of the right to the aid of counsel in every stage of the proceedings. The court shall, at the same time, determine whether there has been a competent and intelligent waiver of such right by inquiring into the background, experience and conduct of the accused and such other matters as the court may deem appropriate. Any waiver accepted shall be spread upon the minutes of the court and made a part of the record in the cause.

In *State v. Goodwin,* 909 S.W.2d 35 (Tenn. Crim. App. 1995), a panel of this Court ruled that the defendant, Goodwin, had validly waived his right to counsel. *Id.* at 41. There, the trial court inquired as to Goodwin's age and education and warned him that proceeding pro se would cause confusion. *Id.* at 40. Goodwin was informed that an attorney would be provided for him for pretrial proceedings through an appeal, if needed. *Id.* Goodwin was also warned that he would not have access to a law library and that his advisory counsel was not required to provide him with photocopies of relevant legal materials. *Id.* at 41. The trial court told Goodwin the trial would proceed at the same pace

13

as it would if he had appointed counsel, that he would not have an opportunity to confer with advisory counsel for every question, and that he was responsible for understanding the rules of evidence and local rules of court. *Id.* The trial court informed Goodwin that, as a litigant, he would have "no greater right than that of any other litigant," and he would be treated the same as if he were represented by counsel. The trial court would not be required to interrupt the trial to explain procedural rules, legal terms, or consequences of the litigant's actions. *Id.* This Court held that Goodwin "clearly understood the hazards of representing himself." *Id.* at 42.

In this case, the following exchange was had between the trial court and the petitioner relative to the petitioner's waiver of his right to counsel on the morning of trial:

> Mr. Heck: He indicated to me, Your Honor, that he wanted to represent himself, that I was a lousy lawyer with a lot of descriptions, and that he didn't want to have anything to do with me, have me in the courtroom or anything else, so I brought it to the Court's attention.
>
> Defendant: You know why, sir? The last time I was in court, sir, we talked about my case. He---I saw him about ten minutes since you hired him. I been up there over four months.
>
> * * *
>
> Court: Are you telling me you don't want him to try it?
>
> Defendant: I don't want him---no, I don't want him, period.
>
> Court: Do you want to try the case yourself?
>
> Defendant: If I have to, yeah.
>
> Court: Well, the case is for trial today.
>
> Defendant: Okay, whatever.
>
> Court: Of course, you understand if you represent yourself, I have to hold you to the same standards I would a lawyer as far as procedure is concerned. You understand that?
>
> Defendant: Yes, sir, whatever. I don't know what---
>
> Court: You've got two choices.
>
> * * *
>
> Court: Mr. Fowler, based on the proof I heard and the jury's position last time, I think your chances really are slim to none, and less than that if you represent yourself. You do have a constitutional right to represent yourself though if you fully

14

understand that you're waiving your right to be represented by an attorney.

Defendant: Yeah, if you don't appoint me one I guess I'll have to.

Court: I cannot appoint you another lawyer.

Defendant: All right then, I'll---

Court: This case is set for trial today.

Defendant: Okay.

Court: It's going to be tried today. And Mr. Heck is a very able, very competent lawyer. He's tried this case---

Defendant: Not to me he's not.

* * *

Defendant: He's not gonna represent me. If I have to represent myself then that's what I'll do.

Court: You are freely waiving your right to be represented by an attorney then. That's your decision?

Defendant: Yes, sir.

A jury of twelve and two alternates were selected, impaneled, and duly accepted by both the state and the defendant. At the conclusion of which, the following colloquy occurred between the trial court and the defendant in the jury's absence.

Court: Do you wish to reconsider and have Mr. Heck sit at the table so he can look at the papers?

Defendant: No, sir, I don't want him.

Court: You can still represent yourself and he can be of counsel, just sit there to advise with you and to look at any exhibit and explain it to you.

Defendant: I don't want him around me.

Court: All right. So you're waiving that right.

(Whereupon Mr. Heck was excused.)

Court: At this point what we are going to do, Mr. Fowler, we'll bring the jury back. The attorney general will read the indictment. I will ask you how you plead to the three indictments. And you can plead not guilty, or you can plead guilty to those charges.

Defendant: Can I plead self-defense?

15

Court: Well, your plea of not guilty includes the plea of self-defense, and the Court will charge the jury at the conclusion of the proof about self-defense.

Defendant: All right.

Court: So you don't plead self-defense; you just plead not guilty.

Defendant: All right, sir.

Court: And then at that point, after you plead, Mr. Bright will have an opportunity to make an opening statement to the jury outlining what the proof will be about. You then will have the right to stand up and make an opening statement to the jury. You're supposed to outline what you think the proof will show. But I'll give you a little bit of leeway on that. At the conclusion of the statements then Mr. Bright will start calling his witnesses to the stand. And after they testify, you have the right to cross-examine them, not make statements yourself, but ask them questions. And then at the conclusion of all the State's proof, if you care to, you can then call witnesses on your own behalf; you can testify in your own behalf. At that point then you would take the stand and testify under oath.

Defendant: Long as I don't take the stand, my record will not be brought up, right?

Court: That's right. If you do not take the stand, then I will instruct the jury at the conclusion, like I did last time, that they cannot consider that for any purpose whatsoever against you.

Defendant: All right, sir.

Court: You do not have to testify.

Defendant: All right, sir.

Court: But you can call other witnesses. Now you cannot testify through asking questions. You can ask questions of the witnesses but you---

Defendant: I can explain to the jury what happened though, right?

Court: Yes, in your opening statement?

Defendant: Yeah.

Court: All right. As I say, I'll give you some leeway.


When an accused asserts his right to represent himself, three conditions must be met before the defendant's right to self-representation becomes valid. "First, the accused must assert the right to self-representation timely. Second, the accused's request must be clear and unequivocal. Third, the accused must knowingly and intelligently waive the

right to the assistance of counsel." *State v. Herrod,* 754 S.W.2d 627, 629-30 (Tenn. Crim. App.), *per. app. denied* (Tenn. 1988) (citations omitted). Clearly, the petitioner asserted his right to self-representation. However, we believe the trial court would have been justified in denying the petitioner's request for self-representation in that the request was not timely. We now consider whether the petitioner's waiver of counsel was knowingly and intelligently made.

In its brief, the state concedes and the trial court admitted that the court did not comply with the requirements of Rule 44, Tenn. R. Crim. P., nor the suggestions outlined in *Herrod,* 754 S.W.2d at 630. However, although the trial court did not comply with the procedural and statutory requirements in assuring the petitioner knowingly and intelligently waived his right to the assistance of counsel, we hold the trial court did substantially comply with the requirements of the Sixth Amendment of the United States Constitution and Article 1, Section 9 of the Tennessee Constitution.

In *Smith v. State,* 987 S.W.2d 871 (Tenn. Crim. App. 1998), this Court considered a similar question as to the effective waiver of counsel by a defendant. In this post-conviction case, this Court reversed the post-conviction court's finding that the petitioner's decision to represent himself was "intelligently made with full knowledge of his right to counsel." *Id.* at 875. This Court found that, under the existing guidelines, the trial court's inquiry should have been more extensive. The failure to warn of the specific dangers of self-representation is the area of primary concern. However, we find the facts in the present case are distinguishable from the situation outlined in *Smith.*

First, we note that the record in this case materially differs from the one in the previously aborted appeal. The record establishes that the petitioner has a long history of criminal experiences and familiarity with both federal and state criminal courts. This familiarity includes the petitioner's experiences in other state jurisdictions. The petitioner has entered at least five or six guilty pleas in various courts. The petitioner has participated in a number of criminal trials, including one in the State of Alabama, in which

17

the petitioner represented himself and won a jury acquittal. The petitioner was well aware of the nature of the charges he was facing in this cause. The petitioner had already gone through a jury trial which resulted in a mistrial and had the assistance of counsel.[7] Although the petitioner is limited in his ability to read and write, we agree with Mr. Heck's assessment that the petitioner has a grasp of courtroom procedures and knows how a courtroom operates. A review of the petitioner's direct and cross-examination of the witnesses at the trial's commencement supports the Court's conclusion. Although the trial court had to restrict the petitioner from testifying in his questions, the petitioner adequately covered the facts which surrounded the stabbing of the victim. We find the petitioner failed to carry his burden by clear and convincing evidence that the trial court failed to adequately insure the petitioner knowingly and intelligently waived his right to the assistance of counsel. There is no merit to this issue.

## C.

### INEFFECTIVE ASSISTANCE OF COUNSEL

The petitioner contends the trial court erred in finding the petitioner received effective assistance of counsel at trial and on appeal. The state disagrees.

When reviewing a petitioner's Sixth Amendment claim of ineffective assistance of counsel, this Court must determine whether the advice or services given by the attorney are within the range of competence demanded of attorneys in criminal cases. *Baxter v. Rose,* 523 S.W.2d 930, 936 (Tenn. 1975). To prevail on a claim of ineffective assistance of counsel, a petitioner "must show that counsel's representation fell below an objective standard of reasonableness" and that this performance prejudiced the defense. There must be a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. *Strickland v. Washington,* 466 U.S. 668, 687-88, 104 S.Ct.

---

[7]The record indicates the jury, at the first trial, was eleven for a guilty verdict, but a lone juror would not agree. In questioning the petitioner, the trial court indicated the petitioner was quite fortunate in that this particular juror had caused several mistrials in both criminal and civil trials. Apparently, this juror had difficulty in agreeing with anyone.

18

2052, 2064, 80 L.Ed.2d 674, *reh'g denied*, 467 U.S. 1267 (1984); *Best v. State,* 708 S.W.2d 421, 422 (Tenn. Crim. App. 1985), *per. app. denied* (Tenn. 1986).

The trial court found that Mr. Heck did not render ineffective assistance of counsel. The fact that Mr. Heck did not see the petitioner between trials, as he should have, was inconsequential. Mr. Heck had already tried the first case and knew everything that would come in the second trial. In addition, Mr. Heck did such a good job in the first trial that some of the jurors made an observation that Mr. Heck had raised some questions in their minds. The petitioner has not carried his burden of proof by clear and convincing evidence as to his allegations of ineffective assistance of counsel, and the evidence adduced at the post-conviction hearing does not preponderate against the trial court's ruling. There is no merit to this issue.

## D.
### DUE PROCESS CLAIM

Further, in his amended petition, the petitioner complains that he was denied a second fair trial in that the state failed to produce a knife which could exculpate him, and the jury instructions on reasonable doubt were unconstitutional. At the evidentiary hearing, the petitioner testified he got into a fight with the victim, he knocked the victim over a table, and the victim came up with a knife, which caused the petitioner to back up, pull a pistol out of his pocket, and shoot the victim. The testimony at trial indicates the victim had a knife in a scabbard, which was still in the scabbard when the victim was treated by paramedics at the scene. The petitioner has failed to meet his burden by clear and convincing evidence as to how he was prejudiced by the state's failure to produce the knife. The petitioner's theory of self-defense was placed before the jury as evidenced by the jury instruction on self-defense. There is no merit to this issue. Likewise, we find no merit to the allegation that Tennessee's jury instruction on reasonable doubt is unconstitutional. *Coe v. Bell,* 161 F.3d 320 (6th Cir. 1998); *State v. Bush,* 942 S.W.2d 489 (Tenn. 1997); *State v. Nichols,* 877 S.W.2d 722, 734 (Tenn. 1994).

19

We hold the trial court's judgment is affirmed.


_____
L. T. LAFFERTY, SENIOR JUDGE


CONCUR:


_____
JOSEPH M. TIPTON, JUDGE


_____
JERRY L. SMITH, JUDGE