# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs October 30, 2001 at Knoxville

## STATE OF TENNESSEE v. PERDIDO COOK

**Direct Appeal from the Criminal Court for Shelby County**
**Nos. 00-02085,00-12318,20    Bernie Weinman, Judge**

---

**No. W2001-00381-CCA-R3-CD - Filed January 9, 2002**

---

The Appellant, Perdido Cook, was convicted by a Shelby County jury of especially aggravated robbery, aggravated robbery, and attempted aggravated robbery. The trial court sentenced Cook to serve 25 years for the especially aggravated robbery conviction, 8 years for the aggravated robbery conviction, and 3 years for the attempted aggravated robbery conviction. All sentences were to be served concurrently. On appeal, Cook raises the following issues for our review: (1) Whether the evidence is sufficient to support the convictions; and (2) whether the imposition of the maximum sentence of 25 years for especially aggravated robbery is justified in view of the trial court's misapplication of certain enhancement factors. After review, we find no reversible error and affirm the judgment of the trial court.

**Tenn. R. App. P. 3; Judgment of the Criminal Court is Affirmed.**

DAVID G. HAYES, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, J., joined; JAMES CURWOOD WITT, JR, J., concurred in results only.

AC Wharton, Jr., Public Defender; Garland Erguden, Assistant Public Defender, Memphis, Tennessee, for the Appellant, Perdido Cook.

Paul G. Summers, Attorney General and Reporter; Michael Moore, Solicitor General; J. Ross Dyer, Assistant Attorney General; William L. Gibbons, District Attorney General; and Rosemary Andrews, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

### Factual Background

During the early morning hours of October 14, 1999, Hillard Grayson, David Shorter, Sarah Collier, and a person identified only as "a white girl named Sasha" were at Collier's apartment in Memphis. Grayson and Shorter were playing cards in the living room while Collier and Sasha were smoking crack in the back bedroom. Eventually Shorter and Grayson took a break from playing

cards so that Shorter could get something to drink and go to the bathroom. At approximately 4:00 a.m., and while Shorter was still in the bathroom, someone knocked on Collier's door and asked to speak with her. When Grayson cracked the door to see who was outside, the Appellant and his accomplice, Henry Johnson, kicked in the door and knocked Grayson to the floor.

Once inside, the Appellant placed a gun in Grayson's mouth and took $40 from his person. Although partially disguised, Grayson immediately recognized the Appellant, who he was acquainted with, and later conveyed this identification to law enforcement officers. As the Appellant held the gun on Grayson, Johnson made his way to the back bedroom where he ordered Collier and Sasha to lay across the bed. Johnson took Sasha's jewelry and threatened to kill Collier unless she gave him money. Before Collier was able to comply with Johnson's request, Johnson heard the toilet flush. Johnson immediately "busted into the bathroom," where he encountered Shorter. Johnson and Shorter began to struggle for possession of Johnson's weapon. The scuffle continued into the living room, where Johnson told the Appellant, "Shoot him, man, shoot him. Get him off of me, man." The Appellant approached the two men and shot Shorter in the back. Shorter's wallet and pager were then taken from his pockets. As a result of the gunshot wound, Shorter is now paralyzed from the waist down.

When arresting the Appellant, Officer Stephen Sloan inquired into the whereabouts of the Appellant's gun for purposes of officer safety. The Appellant replied, "I don't have it. I got rid of it. I got rid of it, threw it." While transporting the Appellant to the police station, the Appellant also "made several statements," including, "You need to find Donny. Donny is the one who shot the guy . . . Donny is the one who did it." After his arrest, the Appellant gave the following statement to police concerning his involvement in this case:

> Q: Were you involved in a robbery that occurred at 1006 Peabody #1, where a man was shot in the back?
> A: Yeah.
>
> Q: Can you tell me who else was involved in this robbery with you?
> A: Donny and his younger brother. [1]
>
> Q: Do you know Donny's and his younger brother's full names?
> A: No, but Donny stay down the street on Peabody from where this happened. He stays in the apartments next to the rooming house where I stay at 1162 Peabody. They momma, her name Keva, stay upstairs from where this incident happened at.
>
> ***

[1] The testimony at trial by the crime victims contradicts the presence of three assailants, as alleged in the Appellant's confession. The victims testified that only two robbers entered the residence, with Grayson identifying one of the two intruders as being the Appellant. Furthermore, the "Donny" mentioned in the Appellant's statement to police is Donny Johnson, the older brother of Henry Johnson.

Q:     Can you describe what you, Donny, and his younger brother were wearing during this robbery?

A:     I had on all black with a dark flannel shirt and a white T-shirt over my face. Donny had on a black hooded jacket. Donny's little brother had on black with a skull cap over his face.

Q:     Were any of you armed with any kind of weapons, and if so, describe them?

A:     I had a big black revolver with a wood grain handle. Most likely, it was a .38. Donny and his little brother both had black handguns. They was automatics, either .380s or 9mms, they looked kind of alike.

Q:     In your own words, can you explain what happened during this robbery?

A:     Sarah [Collier] had sent some Vice-Lords at Donny, cause she didn't want him serving crack on that spot. Donny's mamma stay right up above Sarah. Sarah is a Vice-Lord and Donny is a GD. He was gonna rob her to scare her off the spot. That's how it all started. We talked about it earlier that day. Later on that night we went on and took care of it. Me and Donny went up to the door. [Grayson] was at the door. We pulled our pistols on him. I had [Grayson] hemmed up in the hallway. I put my pistol in his mouth and made him get on the floor. Donny and his brother ran up in the house and was laying everybody down. That's when a scuffle started between Donny and the old man, I think his name is "Bud" [Shorter]. I heard one shot fired. And when I looked to see what had happened, that's when [Grayson] ran out the door. I heard someone saying "Come on, man," and we ran out. Later on, when I asked them if anything was got they told me they didn't get anything.

Q:     Did Donny tell you what happened with the man getting shot?

A:     He told me they got in a scuffle, that's all he told me. But I heard the gun.

Q:     Can you describe Sarah and how long you have known her?

A:     She's fat, dark skinned, and kind of short hair. I've known her for about 3 or 4 years. I have pulled a gun on her once before, because I heard through the streets that she was talking about sending someone to kill me over my gal.

Q:     Have you heard anything about the man who was shot?

A:     I just heard through the street that some detectives were looking for me. At first they was saying that the guy had been murdered, but I found out that he was paralyzed.

Q:     At any time during this robbery, did you ever go into [Grayson's] pocket and take any money from him?

A:    Nope, I never took anything from anyone in that apartment. I didn't even get anything out of the deal if Donny or his brother got anything. They didn't give me anything.

*** 

Q:    Is there anything else you would like to add to your statement at this time, which might aid in this investigation?

A:    No, except Donny was the main one. It was his idea. It was all over a rivalry between Donny and Sarah.

*** 

Q:    Did you give this statement of your own free will, without any threats, promises, or coercion from anyone?

A:    Yes.

At trial, however, the Appellant denied any involvement in the crime. Although he acknowledged that he gave the above statement to police admitting his involvement, he now insists that he did so only because law enforcement officers threatened to arrest his mother if he did not confess.[2]

At trial, the defense was permitted to introduce, through the testimony of Memphis Police Department Sergeant R.B. Ragland, the confession taken from the Appellant's alleged accomplice, Henry Johnson. In Johnson's confession, Johnson admits that he was involved in the crime, but implicates another participant, "Hazel" [Quinton Perkins], as his only accomplice. According to Johnson's confession, it was Hazel who shot Shorter in the back.[3]

## I. Sufficiency of the Evidence

The Appellant argues that the evidence introduced at trial is insufficient to support his convictions for especially aggravated robbery, aggravated robbery, and attempted aggravated robbery. Specifically, he asserts that the convictions "rest essentially upon the eyewitness identification by Hillard Grayson and [the Appellant's] confession." The Appellant further contends that his confession was "offered in the misguided and simplistic belief that everything would work itself out, *i.e.*, his mother would not be arrested for her 'situation' . . . if he just admitted his presence at the robbery." In support of the latter argument, the Appellant maintains that his confession, implicating three robbers instead of two robbers, does not track the events as described by everyone else involved.

A jury conviction removes the presumption of innocence with which a defendant is cloaked and replaces it with one of guilt, so that on appeal, a convicted defendant has the burden of

---

[2] At the suppression hearing, the Appellant asserted that during his questioning, the police threatened to arrest his mother in order to obtain information from her concerning a series of robbery charges allegedly committed by her ex-boyfriend.

[3] Henry Johnson and the Appellant were jointly indicted; however, Johnson's case was severed and disposed of "in later proceedings."

demonstrating that the evidence is insufficient. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). In determining the sufficiency of the evidence, this court does not reweigh or reevaluate the evidence. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). Likewise, it is not the duty of this court to revisit questions of witness credibility on appeal, that function being within the province of the trier of fact. *See generally State v. Adkins*, 786 S.W.2d 642, 646 (Tenn. 1990); *State v. Burlison*, 868 S.W.2d 713, 718-19 (Tenn. Crim. App. 1993). Instead, the defendant must establish that the evidence presented at trial was so deficient that no reasonable trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *State v. Cazes*, 875 S.W.2d 253, 259 (Tenn. 1994), *cert. denied*, 513 U.S. 1086, 115 S. Ct. 743 (1995); Tenn. R. App. P. 13(e). The State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992), *cert denied,* 507 U.S. 954, 113 S. Ct. 1368 (1993).

Robbery is the "intentional or knowing theft of property from the person of another by violence or putting the person in fear." Tenn. Code Ann. § 39-13-401. Robbery becomes aggravated when it is "accomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon" or "where the victim suffers serious bodily injury." Tenn. Code Ann. § 39-13-402(a)(1) and (2). In order for the robbery to become especially aggravated robbery, the robbery must be accomplished with a deadly weapon *and* the victim must suffer serious bodily injury. Tenn. Code Ann. § 39-13-403. Furthermore, an attempt is committed where:

> (a)     A person . . . acting with the kind of culpability otherwise required for the offense:
>
> > (3)     Acts with intent to complete a course of action or cause a result that would constitute the offense, under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of the offense.
>
> (b)     Conduct does not constitute a substantial step under subdivision (a)(3) unless the person's entire course of action is corroborative of the intent to commit the offense.

Tenn. Code Ann. § 39-12-101(a)(3) & (b).

In the present case, Grayson testified that two men forced their way into Collier's apartment on the night in question. Grayson further testified that he immediately recognized the Appellant who placed a gun in his mouth as the Appellant's accomplice headed towards the bedroom. While in the bedroom, the accomplice held the two women at gunpoint and demanded money from Collier. Contemporaneous with these events, the Appellant was robbing Grayson of $40. When a struggle

ensued between the Appellant's accomplice and Shorter, the Appellant shot Shorter in the back. Shorter's wallet and pager were then taken from his person. Grayson immediately identified the Appellant in a photo line-up as being one of the participants in the robbery. It is without question that a conviction may be supported by the testimony of the victim, as the sole witness identifying the defendant as the perpetrator. *State v. Strickland*, 885 S.W.2d 85, 87 (Tenn. Crim. App. 1993); *State v. Williams*, 623 S.W.2d 118, 120 (Tenn. Crim. App. 1981).

Moreover, the Appellant himself confessed to possessing a weapon and being present at the scene on that particular night. Although the Appellant now contends that his confession to police was false and a result of police coercion, the truth of the statement and its afforded weight lies within the province of the jury. Accordingly, we find that the evidence presented at trial, viewed in the light most favorable to the State, supports the Appellant's convictions for especially aggravated robbery, aggravated robbery, and attempted aggravated robbery based upon his conduct and through the conduct of his accomplice. Tenn. Code Ann. § 39-11-401. This issue is without merit.

## II. Sentencing

The Appellant argues that the trial court erred in sentencing him to the maximum sentence of 25 years for his especially aggravated robbery conviction. At sentencing, the trial court applied enhancement factors (1), (3), (5), (10), (11), and (16). The trial court also noted application of mitigating factor (13).[4] Specifically, the Appellant contests the trial court's application of the following enhancement factors found in Tennessee Code Annotated § 40-35-114:

(3)     The offense involved more than one (1) victim;

(5)     The defendant treated or allowed a victim to be treated with exceptional cruelty during the commission of the offense;

(10)    The defendant had no hesitation about committing a crime when the risk to human life was high;

(11)    The felony resulted in death or bodily injury or involved the threat of death or bodily injury to another person and the defendant has previously been convicted of a felony that resulted in death or bodily injury; and

(16)    The crime was committed under circumstances under which the potential for bodily injury to a victim was great.

The State concedes that the trial court's imposition of factors (3), (5), (10), (11) and (16) was error.

---

[4]Although the trial court marked mitigating factor (13) on its "Findings of Fact" form, no factual basis for its application was articulated, either written or oral, by the trial court at sentencing.

The Appellant bears the burden of establishing that the sentence imposed by the trial court was erroneous. *State v. Ashby*, 823 S.W.2d 166, 168 (Tenn. 1991); *State v. Boggs*, 932 S.W.2d 467, 473 (Tenn. Crim. App. 1996); *State v. Fletcher*, 805 S.W.2d 785, 786 (Tenn. Crim. App. 1991). In determining whether the Appellant has carried his burden, this court must consider the evidence received at the trial and the sentencing hearing, the pre-sentence report, the principles of sentencing, the arguments of counsel, the nature and characteristics of the offenses, existing mitigating and enhancing factors, and any statements made by the offender. *Ashby*, 823 S.W.2d at 169; Tenn. Code Ann. § 40-35-210. Furthermore, when a defendant challenges the sentence imposed by the trial court, this court conducts a *de novo* review with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d). This presumption is only applicable if the record demonstrates that the trial court properly considered relevant sentencing principles. *Ashby*, 823 S.W.2d at 169. In this case, we have determined that the trial court erred in its application of certain enhancement factors. Thus, we conduct our review without a presumption of correctness pursuant to Tennessee Code Annotated § 40-35-401(d).

The Appellant was convicted of especially aggravated robbery, a class A felony. Tenn. Code Ann. § 39-13-403. Especially aggravated robbery occurs where a robbery, as defined in § 39-13-401, is "accomplished with a deadly weapon; and where the victim suffers serious bodily injury." Tenn. Code Ann. § 39-13-403(a)(1) and (2). Because the Appellant is a Range I standard offender, the range of punishment for a Class A felony is "not less than fifteen (15) years nor more than twenty-five (25) years." Tenn. Code Ann. § 40-35-112(a)(1). Furthermore, the presumptive sentence is the midpoint of the range if no enhancing or mitigating factors are present. Tenn. Code Ann. § 40-35-210(c). If there are enhancing factors present, the trial court must "enhance the sentence within the range as appropriate for the enhancement factors." Tenn. Code Ann. § 40-35-210(e).

The Appellant's sentence is not determined by the mathematical process of adding the sum total of enhancing factors present then subtracting from this figure the mitigating factors present for a net number of years. Rather, the weight to be afforded an existing factor is left to the trial court's discretion so long as the court complies with the purposes and principles of the 1989 Sentencing Act and its findings are adequately supported by the record. *Boggs*, 932 S.W.2d at 475. The weight to be afforded mitigating and enhancement factors derives from balancing relative degrees of culpability within the totality of the circumstances of the case involved. *Id.* at 476.

With respect to enhancement factor (1), Tennessee Code Annotated § 40-35-114(1), we find that the trial court properly applied this factor to the Appellant's conviction for especially aggravated robbery. The twenty-year-old Appellant's past criminal record includes three weapons convictions, unlawful possession and distribution of an intoxicant, reckless driving, public intoxication, contempt of court, and aggravated robbery. We find the Appellant's past criminal history more than sufficient to support the trial court's application of this factor.

With respect to enhancement factor (3), Tennessee Code Annotated § 40-35-114(3), this court has previously held that enhancement factor (3) may not be applied when the defendant is separately convicted of the offenses charged against each victim. *State v. Williamson*, 919 S.W.2d

69, 82 (Tenn. Crim. App. 1995); *State v. Makoka*, 885 S.W.2d 366, 373 (Tenn. Crim. App.), *perm. to appeal denied*, (Tenn. 1994); *State v. Lambert*, 741 S.W.2d 127, 134 (Tenn. Crim. App. 1987). In the present case, the Appellant was separately charged and convicted of especially aggravated robbery involving the victim Shorter, aggravated robbery involving the victim Grayson, and attempted aggravated robbery involving the victim Collier. In addition to these three victims, a fourth victim, identified in the record as "a white girl name Sasha," was also present. The Appellant was indicted for the aggravated robbery of Sasha; however, the jury in this case acquitted him of this offense. Sasha did not appear at trial. In *State v. Winfield*, 23 S.W.3d 279, 282-83 (Tenn. 2000), our supreme court adopted the rationale of *United States v. Watts*, 519 U.S. 148, 117 S. Ct. 633 (1997), holding that "a sentencing court may apply an enhancement factor based on facts underlying an offense for which the defendant has been acquitted, so long as the facts have been established in the record by a preponderance of the evidence." Thus, a jury's verdict of acquittal does not prevent a sentencing court from considering conduct underlying the acquitted charge if proven by a preponderance of the evidence. Accordingly, we find application of enhancement factor (3) proper, *i.e.*, that the three offenses involved more than three victims.

With respect to enhancement factor (5), Tennessee Code Annotated § 40-35-114(5), we acknowledge that our supreme court has determined that proof of serious bodily injury does not necessarily establish the enhancement factor of "exceptional cruelty." *State v. Poole*, 945 S.W.2d 93, 98 (Tenn. 1997). Instead, our supreme court has found that before this factor may be applied, the facts of the case must "support a finding of 'exceptional cruelty' that 'demonstrates a culpability distinct from and appreciably greater than that incident to' the crime." *Poole*, 945 S.W.2d at 98. When the trial court applies enhancement factor (5), it should state what actions of the defendant, apart from the elements of the offense, constituted exceptional cruelty. *State v. Goodwin*, 909 S.W.2d 35, 45 (Tenn. Crim. App. 1995). In this case, the trial court failed to articulate its reasons for applying factor (5). After review, we are unable to conclude that the record supports application of the "exceptional cruelty" enhancement factor. Thus, the trial court erred in applying factor (5).

The Appellant next contends that the trial court erred in applying enhancement factor (10), Tennessee Code Annotated § 40-35-114(10), because this factor is an essential element to the offense of especially aggravated robbery. We agree. The focus of enhancing factor (10) centers upon the question of whether the offender's conduct created a high risk to human life. *State v. Jones*, 883 S.W.2d 597, 602 (Tenn. 1994). In this case, the Appellant's use of a weapon created this high risk of harm to human life. However, when an offense is committed with a deadly weapon, it is inherent within the offense that there was a risk to human life and that the potential for injury was great. *State v. Hill*, 885 S.W.2d 357, 363 (Tenn. Crim. App. 1994). Accordingly, factor (10) is inherent in the offense of especially aggravated robbery which, requires use of a weapon. Thus, we conclude that the trial court misapplied enhancement factor (10) to the Appellant's conviction of especially aggravated robbery.

With respect to enhancement factor (11), Tennessee Code Annotated § 40-35-114(11), the Appellant contends that there was no proof that a prior victim was injured by the Appellant. We

agree. We find nothing in the record which suggests that the Appellant's past crimes "resulted in death or bodily injury" as required by factor (11). Thus, the trial court erred by applying this factor.

Lastly, the Appellant asserts that the trial court erred by applying enhancement factor (16), Tennessee Code Annotated § 40-35-114(16), arguing that a crime committed under circumstances where the potential for bodily injury to a victim is great is inherent to the offense of especially aggravated robbery. We agree. *See State v. Holly Lack Earls*, No. 01C01-9612-CC-00506 (Tenn. Crim. App. Jan. 16, 1998). Furthermore, we find that factor (16) applies only to the actual victim of the crime and does not refer to "potential victims." *State v. Bingham*, 910 S.W.2d 448, 452 (Tenn. Crim. App. 1995), *overruled on other grounds by State v. Hooper*, 29 S.W.3d 1, 9-10 (Tenn. 2000)(panel of this court refused to apply this factor based on a risk to others, finding that "victim" referred to the victim of the crime and not other potential victims). Thus, the trial court erred by applying factor (16) in this case.

## CONCLUSION

Upon *de novo* review, we find that the trial court properly applied enhancement factors (1) and (3) but erred in applying enhancement factors (5), (10), (11), and (16). Following *de novo* review, we conclude that the application of enhancing factors (1) and (3) and the absence of any mitigating factors justify the maximum sentence of 25 years in this case.

_____
DAVID G. HAYES, JUDGE