IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
January 25, 2022 Session

### STATE OF TENNESSEE v. DARON HALL

**Appeal from the Criminal Court for Knox County**
**No. 110227      Steven Sword, Judge**

---

### No. E2020-01634-CCA-R3-CD

---

The Defendant, Daron Hall, was convicted by a Knox County Criminal Court jury of evading arrest, a Class E felony; driving a motor vehicle while his license was suspended, a Class B misdemeanor; criminal impersonation, a Class B misdemeanor; violating the "light law," a Class C misdemeanor; and operating a motor vehicle without a proper license plate, a Class C misdemeanor. *See* T.C.A. §§ 39-16-603 (2018) (subsequently amended) (evading arrest), 55-50-504 (2018) (driving on a suspended license), 39-16-301 (2018) (criminal impersonation), 55-9-402 (2018) (motor vehicle light law), 55-5-114 (2018) (proper license plate). The trial court sentenced the Defendant as a career offender to six years' confinement. On appeal, the Defendant contends that (1) the evidence is insufficient to support his convictions and (2) the trial court erred by denying his motion for a continuance. We affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of Criminal Court Affirmed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and D. KELLY THOMAS, JR., JJ., joined.

Andrew Pate, Knoxville, Tennessee, for the appellant, Daron Hall.

Herbert H. Slatery III, Attorney General and Reporter; Edwin Alan Groves, Jr., Assistant Attorney General; Charme P. Allen, District Attorney General; and Phillip Morton and Ta Kisha Fitzgerald, Assistant District Attorneys General, for the appellee, State of Tennessee.

### OPINION

The Defendant's convictions relate to a November 29, 2016 driving-related incident. At the trial, Knoxville Police Officer J.D. Hopkins testified that on November 29, 2016, at 1:15 a.m., he saw a dark-colored vehicle without headlights on the roadway. He recalled that it was raining at the time. He said that the car drove over a hill, that he

followed the car, and that he saw the car, a black Nissan Maxima, stopped in the roadway. He said that the driver spoke to a woman who stood "on the side of the road." Officer Hopkins said that he turned on his blue lights to conduct a traffic stop and that that the driver stopped the car on a side street. He said that he spoke to the driver, who stated he did not have a license, that the driver provided a Social Security number and a birthdate, and that the driver reported the car was a rental.

Officer Hopkins testified that he attempted to identify the driver with the information the driver provided but that rain "blemished out" the Social Security number on his notepad. He said that he spoke to the driver again and that the driver provided a different Social Security number, which police records showed belonged to a white male, although the driver was black. Officer Hopkins said that he spoke to the driver again, that he asked for the driver's name, and that the driver provided the name Marvin Neal Hall. However, police records and photographs did not match the driver's description. Officer Hopkins said that Marvin Hall's driver's license photograph reflected that Mr. Hall had pierced ears and that Officer Hopkins talked to the driver again to attempt to determine if the driver had pierced ears. Officer Hopkins recalled that the driver was "really tall" but said that the driver did not have pierced ears.[1]

Officer Hopkins testified that he asked the driver to step out of the car because the driver had lied about his identity but that the driver "floored the car" and "took off." He said that he notified dispatch that the driver fled, that he provided dispatch with a description of the car and the driver, and that he and his partner left the scene.

A video recording of the traffic stop was received as an exhibit. The recording is consistent with Officer Hopkins's testimony regarding the events of the traffic stop. The recording likewise reflects that the driver was never in the camera's view.

Officer Hopkins testified that later, another officer contacted him about the driver who fled the traffic stop because the driver matched the description of a "suspect from the situation" the other officer was investigating. Officer Hopkins said that, based upon "information" from the officer, Officer Hopkins searched a database and identified the Defendant as the driver of the car who fled the stop. Officer Hopkins said he obtained arrest warrants for the Defendant. Officer Hopkins stated that the car driven by the Defendant had been a rental car, that the license plate had expired in October 2016, and that the Defendant's driver's license had been suspended. Officer Hopkins identified the Defendant in the courtroom as the driver of the car.

---

[1] The recording of the traffic stop reflects that the driver stated he was six feet tall.

Upon this evidence, the Defendant was convicted of evading arrest, driving while his license was suspended, criminal impersonation, violating the motor vehicle light law, and operating a motor vehicle without a proper license plate. He received an effective six-year sentence as a career offender. This appeal followed.

## I.      Sufficiency of the Evidence

The Defendant contends that the evidence is insufficient to support his convictions. Although he does not allege the State failed to prove the elements of the offenses beyond a reasonable doubt, he argues the State failed to prove his identity as the driver. The State responds that the evidence is sufficient. We agree with the State.

In determining the sufficiency of the evidence, the standard of review is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see State v. Vasques*, 221 S.W.3d 514, 521 (Tenn. 2007). The State is "afforded the strongest legitimate view of the evidence and all reasonable inferences" from that evidence. *Vasques*, 221 S.W.3d at 521. The appellate courts do not "reweigh or reevaluate the evidence," and questions regarding "the credibility of witnesses [and] the weight and value to be given the evidence . . . are resolved by the trier of fact." *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997); *see State v. Sheffield*, 676 S.W.2d 542, 547 (Tenn. 1984).

"A crime may be established by direct evidence, circumstantial evidence, or a combination of the two." *State v. Hall*, 976 S.W.2d 121, 140 (Tenn. 1998); *see State v. Sutton*, 166 S.W.3d 686, 691 (Tenn. 2005). "The standard of review 'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)). A conviction may be based upon circumstantial evidence alone. *See Dorantes*, 331 S.W.3d at 380-381.

"Identity of the perpetrator is an essential element of any crime." *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006). Circumstantial evidence alone may be sufficient to establish the perpetrator's identity. *State v. Reid*, 91 S.W.3d 247, 277 (Tenn. 2002). The identity of the perpetrator is a question of fact for the jury to determine. *State v. Thomas*, 158 S.W.3d 361, 388 (Tenn. 2005). "The jury decides the weight to be given to circumstantial evidence, and '[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt[.]'" *Rice*, 184 S.W.3d at 662 (quoting *Marable v. State*, 313 S.W.2d 451, 457 (Tenn. 1958)).

The record reflects in the light most favorable to the State that Officer Hopkins conducted a traffic stop and that, based upon our review of the recording of the stop, he interacted with the driver for approximately ten minutes before the driver fled the scene. Although Officer Hopkins was unable to identify the driver through any official records at the time of the stop, another officer provided him with the Defendant's information because the officer thought the Defendant matched the description of the driver provided by Officer Hopkins to police dispatch. Upon viewing the Defendant's information and photograph, Officer Hopkins immediately identified the Defendant as the driver. Officer Hopkins, likewise, identified the Defendant as the driver at the trial. We conclude that this evidence sufficiently established the Defendant's identity as the perpetrator.

In reaching this conclusion, we have not overlooked the Defendant's assertions that the traffic stop occurred in the early morning hours, that it was raining, and that the driver was tall, making it difficult for the officer to see the driver's face. However, the Defendant's arguments focus on the weight and value to be given to Officer Hopkins's testimony, and any conflicts in the evidence were resolved by the jury. *See Bland*, 958 S.W.2d at 65; *Sheffield*, 676 S.W.2d at 547. The jury credited Officer Hopkins's testimony. The Defendant is not entitled to relief on this basis.

## II.     Motion to Continue

The Defendant contends that the trial court erred by denying his oral motion to continue on the morning of the trial. He argues that his inability to confer with trial counsel prejudiced his case sufficiently to create a reasonable possibility that a different outcome would have resulted had the court granted the motion. The State responds that the court did not abuse its discretion. We agree with the State.

"[A] motion for a continuance is addressed to the sole discretion of the trial judge," and the judge's decision "will not be reversed on appeal absent an abuse of discretion and prejudice to the defendant." *Baxter v. State*, 503 S.W.2d 226, 230 (Tenn. Crim. App. 1973); *State v. Willis*, 496 S.W.3d 653, 744 (Tenn. 2016); *see State v. Goodwin*, 909 S.W.2d 35, 44 (Tenn. 1995). It is the appealing party's burden to show how the trial court's decision was prejudicial. *Baxter*, 503 S.W.2d at 230. The critical inquiry "is whether one has been deprived of his rights and whether an injustice has been done." *Id*. As a result, the record must reflect that "the denial of the requested continuance 'denied the defendant a fair trial or that the result of the trial would have been different.'" *State v. Vaughn*, 279 S.W.3d 584, 598 (Tenn. Crim. App. 2008) (quoting *State v. Odom*, 137 S.W.3d 572, 589 (Tenn. 2004)); *see Willis*, 496 S.W.3d at 744; *Goodwin*, 909 S.W.2d at 44.

The record reflects that on April 28, 2017, the Knox County District Public Defender's Office was appointed to represent the Defendant. A motion to continue the trial was granted at the request of the assistant district public defender on November 20, 2017. The trial was scheduled for May 16, 2018. However, on April 11, 2018, the District Public Defender's Office filed a motion seeking permission to withdraw from the case because of ethical obligations. The trial court took the motion under advisement and continued the case until April 27, 2018, at which time the court granted the motion to withdraw and an attorney was appointed to represent the Defendant. The trial was scheduled for August 15, 2018. The trial was not held on August 15, 2018, and on February 7, 2019, the subsequent attorney appointed to represent the Defendant filed a motion to withdraw, citing a deterioration of communication. On March 7, 2019, the court granted the motion. Trial counsel was appointed on March 7, 2019, and the trial was scheduled for April 12, 2019, although the trial was continued for an unspecified reason.

On July 8, 2019, trial counsel filed a motion to continue, asserting that he had received the discovery materials from the previous attorney on April 12, only ninety-four days before the July 15, 2019 trial date, that further investigation was necessary to locate a potential defense witness, and that the Administrative Office of the Courts denied his request for funds to hire an investigator. The motion also cited counsel's multiple trials and hearings since his appointment. Although the record does not contain the disposition of the motion, the record reflects that the trial began on August 27, 2019.

On August 27, 2019, trial counsel made an oral motion to continue the trial at the Defendant's direction. The record reflects that the week before the trial, the prosecutor and counsel exchanged email messages regarding counsel's inability to speak with the Defendant while the Defendant was in the custody of the Department of Correction because prison officials were "not cooperative." The Defendant was transported to the jail at an unspecified time, and counsel was able to have an in-person meeting with the Defendant the day before the trial. Counsel told the trial court that he had not planned to request a continuance because he had reviewed the discovery and had prepared a trial strategy but that after speaking with the Defendant the previous day, the Defendant presented counsel with research the Defendant had conducted at the prison and wanted "an opportunity to have further meetings with [counsel] to consult about and possibly have [counsel] follow up on." Counsel told the court that the Defendant was willing to address the court about his need to consult further with counsel before the trial. The court denied the request and stated that nearly three years had passed since the offenses. The court acknowledged that the Defendant had been charged with a Class E felony, along with "some minor stuff," and stated that the case was not complicated and needed to be resolved. The case proceeded to trial.

We conclude that the trial court did not abuse its discretion by denying the motion to continue on the morning of the trial. Although counsel advised the court that the Defendant had conducted research relevant to this case, the record does not reflect the substance of the research. Counsel conceded during oral argument before this court that the defense did not provide a proffer of the substance of the research in the trial court proceedings, and the substance was not disclosed at oral argument. Counsel stated during oral argument that he and the Defendant met three or four times before the trial. As a result, the Defendant has failed to show that he was denied his right to a fair trial or that the result of the trial would have been different had the motion to continue been granted.

In reaching this conclusion, we have not overlooked the Defendant's argument that because he and his counsel were denied additional time to confer about the Defendant's research and because Department of Correction officials were uncooperative in allowing them to communicate, prejudice should be assumed. Our review for the denial of a motion to continue is for an abuse of discretion to the prejudice of the defendant, and this court cannot modify this standard. *See Willis*, 496 S.W.3d at 744; *Baxter*, 503 S.W.2d at 230. The Defendant is not entitled to relief.

In consideration of the foregoing and the record as a whole, the judgments of the trial court are affirmed.


_____
ROBERT H. MONTGOMERY, JR., JUDGE