IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
January 26, 2022 Session

**STATE OF TENNESSEE v. STERLING WHITE**

**Appeal from the Criminal Court for Knox County**
**No. 113461    Steven Sword, Judge**

**No. E2021-00307-CCA-R3-CD**

The Defendant, Sterling White was convicted by a Knox County Criminal Court jury of evading arrest, a Class E felony; reckless driving, a Class B misdemeanor; and leaving the scene of an accident, a Class B misdemeanor. *See* T.C.A. §§ 39-16-603 (2018) (subsequently amended) (evading arrest), 55-10-205 (2020) (reckless driving), 55-10-102 (Supp. 2017) (subsequently amended) (leaving the scene). The trial court sentenced the Defendant as a persistent offender to six years' confinement. On appeal, the Defendant contends that (1) the evidence is insufficient to support his convictions and (2) the trial court erred by denying his motion for a continuance. We affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of Criminal Court Affirmed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and D. KELLY THOMAS, JR., JJ., joined.

Andrew Pate, Knoxville, Tennessee, for the appellant, Sterling White.

Herbert H. Slatery III, Attorney General and Reporter; Katherine C. Redding, Assistant Attorney General; Charme P. Allen, District Attorney General; and Phillip Morton and Ta Kisha Fitzgerald, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

The Defendant's convictions relate to a July 7, 2017 driving-related incident. At the trial, University of Tennessee Police Officer Jeffrey Quirin testified that on July 7, at 3:23 a.m., he sat inside his police car while completing paperwork. He said that he saw a silver Honda "doing circles, almost donuts" in an intersection in the Fort Sanders area of Knoxville. He said that initially, he thought the driver was "goofing around, maybe under the influence" but that the car abruptly went down the street in front of his police car. He

said the car made a sudden right turn into a parking lot and "then started coming at" his police car. He said the car drove toward the side of his police car. He said that he left his police car because he did not know what would occur.

Officer Quirin testified that although the incident occurred near a building under construction, street lighting made the area "fairly bright." He said that after he left his police car, he saw a black female passenger and a black male driver, the latter of whom wore a black ball cap and a white or gray tank top. He said that he saw the occupants for a "prolonged period," which he later estimated was about ten seconds, as he provided information to dispatch. He said that the car stopped about ten yards from his police car and that the driver had a "deer-in-the-headlights look," paused, and left the parking lot driving the wrong way on a one-way street. Officer Quirin said that he "[a]bsolutely saw the driver's face." Officer Quirin said that before the driver fled, he told the driver to stop and to talk to the officer.

Officer Quirin testified that he followed but lost the car and discontinued his pursuit pursuant to department policy. He said that about ten minutes later, he saw the car parked somewhere in the general vicinity and that the man and the woman had switched seats. Officer Quirin said that he requested assistance to conduct a "high-risk" traffic stop. He said that before another officer arrived, the car drove the wrong way down a one-way street, that he turned on his blue lights, and that he followed the car knowing another officer was a couple of blocks away. He said that the car pulled over and stopped. He said that after the driver was removed from the car, he confirmed that the driver was the woman who had previously been in the passenger seat. Officer Quirin said that as the woman was being detained, the male passenger, who had been the driver initially, moved to the driver's seat and drove away from the traffic stop. Officer Quirin said that he began running toward the car as the passenger moved to the driver's seat and that he confirmed the person inside the car had been the driver during the first police pursuit.

Officer Quirin testified that he and other officers followed the car, that they lost sight of the car, and that they ended the pursuit. He said that about five minutes later, an officer found the car "crashed out" into a concrete wall in World's Fair Park. He recalled the car had also struck a stop sign. He said that the car had been abandoned, although the wreck required the driver by law to remain at the scene.

Officer Quirin testified that at the scene of the traffic stop, he spoke to the woman who had been inside the car, that the woman identified the Defendant as the driver, that he searched an official database and identified the Defendant as the driver from an official photograph, and that he obtained an arrest warrant for the Defendant. Officer Quirin identified Defendant in the courtroom as the driver.

-2-

Video recordings from two responding officers' body cameras were received as exhibits. The recordings were consistent with Officer Quirin's testimony relative to the events between the female driver's leaving the car at the direction of Officer Quirin and when the abandoned car was found by police officers.

Officer Quirin testified that the woman was not charged with a crime in connection with this case because she stopped the car when he turned on the blue lights, she was compliant during the stop, and was cooperative with the police officers. He said that the car was a total loss, that the woman owned it, and that it was not insured. He recalled that officers drove her home after the investigation was complete.

Angela Knighton testified that in 2017, she and the Defendant dated. She said that the Defendant drove her car in the early morning hours of July 7. She said that the police attempted to conduct a traffic stop around the Fort Sanders area after the Defendant "did a turn that . . . was not a good turn" and "pulled in that parking lot in front of" the police. She said the officer said, "Hey, come here for a minute. I need to ask you some questions." She said that the Defendant drove away, that the officer followed, that the Defendant stopped the car in front of a home, and that they left the car and sat on a couch on the porch of the home. She said that afterward, they returned to the car, that the Defendant told her to drive, and that as she began to drive, a police car pulled behind her car. She said that she saw blue lights and that she stopped the car. She said that at an officer's direction, she left the car and walked toward the officer and that the Defendant "jumped into the driver's seat and took off." She said she cooperated with the officers and answered their questions. She said that the next day she saw her car, which was a total loss due to the damage.

On cross-examination, Ms. Knighton testified that she had a panic attack before the incident in this case and that she had asked the Defendant to drive her to the hospital. She said she had a history of panic attacks and that during an episode, she could not breathe, her chest tightened, and she felt as though she were going to "pass out." She did not recall drinking alcohol around the time of the incident and said that she only drank beer. She said that if she did drink beer that night, it would have been long before the 3:00 a.m. incident.

Upon this evidence, the Defendant was convicted of evading arrest, reckless driving, and leaving the scene of an accident. He received an effective six-year sentence as a persistent offender. This appeal followed.

## I. Sufficiency of the Evidence

The Defendant contends that the evidence is insufficient to support his convictions. Although he does not allege the State failed to prove the elements of the offenses beyond a reasonable doubt, he argues the State failed to prove his identity as the driver. The State responds that the evidence is sufficient. We agree with the State.

In determining the sufficiency of the evidence, the standard of review is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see State v. Vasques*, 221 S.W.3d 514, 521 (Tenn. 2007). The State is "afforded the strongest legitimate view of the evidence and all reasonable inferences" from that evidence. *Vasques*, 221 S.W.3d at 521. The appellate courts do not "reweigh or reevaluate the evidence," and questions regarding "the credibility of witnesses [and] the weight and value to be given the evidence . . . are resolved by the trier of fact." *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997); *see State v. Sheffield*, 676 S.W.2d 542, 547 (Tenn. 1984).

"A crime may be established by direct evidence, circumstantial evidence, or a combination of the two." *State v. Hall*, 976 S.W.2d 121, 140 (Tenn. 1998); *see State v. Sutton*, 166 S.W.3d 686, 691 (Tenn. 2005). "The standard of review 'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)). A conviction may be based upon circumstantial evidence alone. *See Dorantes*, 331 S.W.3d at 380-381.

"Identity of the perpetrator is an essential element of any crime." *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006). Circumstantial evidence alone may be sufficient to establish the perpetrator's identity. *State v. Reid*, 91 S.W.3d 247, 277 (Tenn. 2002). The identity of the perpetrator is a question of fact for the jury to determine. *State v. Thomas*, 158 S.W.3d 361, 388 (Tenn. 2005). "The jury decides the weight to be given to circumstantial evidence, and '[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt[.]'" *Rice*, 184 S.W.3d at 662 (quoting *Marable v. State*, 313 S.W.2d 451, 457 (Tenn. 1958)).

The record reflects in the light most favorable to the State that Officer Quirin saw a car being driven erratically in the early morning hours of July 7, 2017. The car made an abrupt right turn into a parking lot, stopping about ten yards in front of Officer Quirin's police car. The officer attempted to talk to the driver, at which time the officer saw the driver for a "prolonged period" and "[a]bsolutely saw the driver's face." Although the

incident occurred in the early morning hours before daylight, street lighting made the area "fairly bright." The driver fled the scene, preventing the officer from identifying the driver with official records, but Ms. Knighton, who had been the initial passenger inside the car, told officers that the Defendant had been the initial driver and that she and the Defendant changed seats at the Defendant's direction after the first pursuit. Officer Quirin conducted a traffic stop after Ms. Knighton became the driver, and the Defendant fled the scene of the traffic stop after Ms. Knighton was detained by the officers. After speaking with Ms. Knighton and upon viewing the Defendant's information and photograph in an official database, Officer Quirin immediately identified the Defendant as the driver. Officer Quirin, likewise, identified the Defendant in the courtroom as the driver. We conclude that this evidence sufficiently established the Defendant's identity as the perpetrator. The Defendant is not entitled to relief on this basis.

## II.     Motion to Continue

The Defendant contends that the trial court erred by denying his oral motion to continue on the morning of the trial. He argues that Ms. Knighton was a surprise witness, which prejudiced his defense. The State responds that the trial court did not abuse its discretion. We agree with the State.

"[A] motion for a continuance is addressed to the sole discretion of the trial judge," and the judge's decision "will not be reversed on appeal absent an abuse of discretion and prejudice to the defendant." *Baxter v. State*, 503 S.W.2d 226, 230 (Tenn. Crim. App. 1973); *State v. Willis*, 496 S.W.3d 653, 744 (Tenn. 2016); *see State v. Goodwin*, 909 S.W.2d 35, 44 (Tenn. 1995). It is the appealing party's burden to show how the trial court's decision was prejudicial. *Baxter*, 503 S.W.2d at 230. The critical inquiry "is whether one has been deprived of his rights and whether an injustice has been done." *Id*. As a result, the record must reflect that "the denial of the requested continuance 'denied the defendant a fair trial or that the result of the trial would have been different.'" *State v. Vaughn*, 279 S.W.3d 584, 598 (Tenn. Crim. App. 2008) (quoting *State v. Odom*, 137 S.W.3d 572, 589 (Tenn. 2004)); *see Willis*, 496 S.W.3d at 744; *Goodwin*, 909 S.W.2d at 44.

Tennessee Code Annotated section 40-17-106 (2018), states that the district attorney general has a "duty" to list on the indictment or presentment the names of witnesses the State intends to present at a trial. However, this duty is "directory only and does not necessarily disqualify a witness whose name does not appear on the indictment from testifying." *State v. Harris*, 839 S.W.2d 54, 69 (Tenn. 1992); *see State v. Street*, 768 S.W.2d 703, 710-11 (Tenn. Crim. App. 1988). A defendant has the burden of showing that "prejudice, bad faith, or undue advantage" resulted from the State's delay in providing a

witness' name. *Harris*, 839 S.W.2d at 69. In the context of prejudice, "it is not the prejudice which result[s] from the witness' testimony but the prejudice which result[s] from the defendant's lack of notice which is relevant to establish prejudice." *State v. Kendricks*, 947 S.W.2d 875, 883 (Tenn. Crim. App. 1996). A trial court's decision to permit a witness to testify is within the sound discretion of the trial court. *State v. Underwood*, 669 S.W.2d 700, 703 (Tenn. Crim. App. 1984).

The record reflects that on the morning of the trial, trial counsel told the trial judge that he learned the previous day that the State had a "last-minute witness," although counsel had not received written notice. Initially, the State argued that Ms. Knighton was a possible rebuttal witness, depending on the trial evidence, and that her name, address, and telephone number were provided to the defense in the discovery materials. Counsel told the judge that although he was aware of Ms. Knighton's identity based upon the discovery materials, she was not listed in the court file as having been served with a subpoena to testify at the trial. Counsel noted that the only witnesses contained in the court file were police officers and stated that his trial strategy had been based upon the cross-examination of "that type of evidence." Counsel said that suddenly learning the State intended to present Ms. Knighton, who purported to have personal knowledge of the Defendant, changed counsel's necessary trial preparation. Counsel requested that the trial move forward but with the exclusion of Ms. Knighton's testimony or, alternatively, that the court grant a continuance in order for counsel to "prepare a strategy." The State responded that the discovery materials prevented any type of unfair surprise because the body camera recordings showed Ms. Knighton leaving the car at the direction of police officers, the passenger moving to the driver's seat and leaving the scene of a traffic stop, Ms. Knighton's identifying herself, and her identification of the Defendant as the driver.

The trial court determined that the Defendant had not been prejudiced by the late notice of adding Ms. Knighton to the State's witness list. The court noted that Ms. Knighton was present during the offenses, that videos showed what transpired, and that her name was contained in discovery materials. The court denied the motion to continue and the motion to exclude her testimony.

We note that the record contains a trial court order entered on the day before the trial that added Ms. Knighton as a trial witness to the indictment and that a copy of the order was sent by the postal service to trial counsel. The trial court, in denying the Defendant's motion for a new trial, found that counsel did not receive the order before the trial began and that counsel learned from court personnel that Ms. Knighton would testify.

-6-

We conclude that the trial court did not abuse its discretion by denying the Defendant's motion for a continuance or to exclude Ms. Knighton's testimony. The parties do not dispute that Ms. Knighton's connection with this case was contained in the discovery materials, which included video recordings of the traffic stop. In the recording, she identified the Defendant as the driver of the car that fled the scene. Although the record does not contain an explanation for the late notice, the substance of her testimony was known to the defense. We note that at oral argument before this court, trial counsel stated that the defense "certainly knew she might be used as a witness in this proceeding" and that her name was not "completely new." The record does not contain evidence that the State acted in bad faith or attempted to acquire undue advantage by presenting Ms. Knighton as a trial witness.

Likewise, the Defendant has failed to show that he was prejudiced by the late notice that Ms. Knighton would testify. The defense knew of Ms. Knighton's involvement in this case, and trial counsel cross-examined her at the trial. Although the Defendant argues that Ms. Knight's testimony "proved to be the State's central witness, without whom there would have been no possibility of conviction," the record reflects otherwise. Officer Quirin testified that after he was provided potential information that could identify the driver, the officer used official records and photographs to identify the Defendant. Officer Quirin also identified the Defendant in the courtroom at the trial as the driver. Ms. Knighton provided testimony consistent with that of Officer Quirin regarding the events leading up to the flight from the traffic stop, but her testimony was not the sole basis for determining the Defendant's identity as the perpetrator.

The Defendant also argues that if he had known Ms. Knighton would testify at the trial, he and his investigator "would have had an opportunity to interview the witness in advance," discover her "mental health issues" related to her panic attacks, and develop a proper impeachment strategy, including "potentially discovering an additional witness." However, as the trial court correctly stated at the motion for a new trial hearing, Ms. Knighton was known to the defense because she was seen and heard talking to the police at the time the Defendant fled the scene in Ms. Knighton's car and because she was referenced in the police report and the arrest warrant. Likewise, the Defendant and Ms. Knighton were in a romantic relationship at the time of the offenses, and the Defendant knew of her connection to this case even if she were not listed as a witness on the indictment. As a result, Ms. Knighton was not a "surprise witness" as characterized by the defense. The prejudice to the Defendant must result from the lack of notice, not merely the substance of Ms. Knighton's testimony. *See Kendricks*, 947 S.W.2d at 883. The Defendant failed to satisfy this burden.

Therefore, the Defendant failed to show that the denial of the motion to continue deprived him of a fair trial or that a different result would have occurred had the continuance been granted. The trial court did not abuse its discretion by denying the motion to continue. The Defendant likewise failed to show that the trial court abused its discretion by allowing Ms. Knighton to testify at the trial. The Defendant is not entitled to relief on this basis.

In consideration of the foregoing and the record as a whole, the judgments of the trial court are affirmed.

_____
ROBERT H. MONTGOMERY, JR., JUDGE